**GILLIVAN, Appellant,**

v.

**OHIO BUREAU [BOARD] OF TAX APPEALS, Appellee.**

[Cite as *Gillivan v. Ohio Bd. of Tax Appeals* (1994), 98 Ohio App.3d 685.]

Court of Appeals of Ohio,
Franklin County.

No. 94APE02–145.

Decided on Aug. 18, 1994.

*Michael A. Moses,* for appellant.

*Lee Fisher,* Attorney General, and *Elizabeth J. Birch,* Assistant Attorney General, for appellee Ohio Board of Tax Appeals.

---

DESHLER, Judge.

This is an appeal by appellant, John Gillivan, from a judgment of the Franklin County Court of Common Pleas, affirming the order of the State Personnel Board of Review ("SPBR"), dismissing appellant's appeal for lack of subject-matter jurisdiction.

On August 4, 1991, appellant was removed from his position as an "Administrative Assistant 4" with appellee, the Ohio Board of Tax Appeals ("BTA"). Following his removal, appellant filed an appeal with the SPBR.

The matter was referred to a hearing examiner of the SPBR, and a hearing was held beginning March 2, 1992. On November 27, 1992, the hearing examiner filed a report, recommending that the SPBR dismiss the appeal based upon the examiner's finding that appellant was employed in an unclassified status at the time of his removal and, thus, the SPBR lacked jurisdiction over the appeal. By order dated December 23, 1992, the SPBR adopted the report of the hearing examiner and dismissed the action.

Appellant filed a notice of appeal with the trial court. By decision filed January 12, 1994, the trial court concluded that the order of the SPBR, dismissing appellant's appeal for lack of subject-matter jurisdiction, was supported by reliable, probative and substantial evidence and was in accordance with law.

On appeal, appellant asserts one assignment of error for review:

"The common pleas court erred in failing to vacate the decision of the State Personnel Board of Review as it was not supported by reliable, probative, and substantial evidence and was not in accordance with law."

The thrust of appellant's argument is that the evidence does not support a finding that he was an employee holding a "fiduciary relation" to the BTA. Appellant maintains that the evidence indicates that the job duties he performed on behalf of the BTA were mostly "routine ministerial tasks of an administrative nature."

 R.C. 119.12 sets forth the standard of review to be applied by the trial court in deciding an administrative appeal and provides in part that the court may affirm the order of the agency if it finds, based upon consideration of the entire record and such additional evidence admitted by the court, "that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." On an appeal from the trial court's review of the agency's order, an

appellate court's review is more limited and is restricted to a determination whether the trial court abused its discretion. *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264, 267.

The issue before this court is whether the trial court abused its discretion in affirming the order of the SPBR, dismissing appellant's appeal for lack of jurisdiction on the basis that appellant was a "fiduciary employee" (and thus in the unclassified service) within the meaning of R.C. 124.11(A)(9).

Evidence submitted at the administrative hearing indicates that appellant was hired by the BTA on June 5, 1989, as an "Administrative Assistant 2." Appellant was initially hired to coordinate the BTA's relocation to a new office site. He was subsequently promoted to the position of "Administrative Assistant 4," effective May 7, 1990.[1]

One of appellant's job duties with the BTA involved his role as liaison to each of the eighty-eight county auditors. The basic purpose of the liaison program was for appellant to meet with each of the county auditors (or their representatives) in order to better establish lines of communication between the auditors and the BTA. Appellant's duties involved arranging on-site meetings with the different auditor's offices, providing the auditors with copies of the BTA's practices and procedures, determining the number of filings during the past calendar year and estimating the number of filings in the present year, inquiring about any problems the auditors might have, and assessing how the BTA could better serve the auditors.

There was evidence indicating that, although the BTA deemed the liaison program to be necessary, the BTA did not mandate how appellant should administer the program. According to Sue Pohler, the executive director of the BTA, appellant set his own schedule in meeting with the auditors and he "did whatever he deemed necessary when he was there." Appellant reported directly to the BTA chairman regarding his liaison duties. Pohler testified that the BTA relied upon appellant's judgment and discretion regarding this program, stating that the BTA "relied on him to take care of any problems with * * * [the] auditors and to respond to their needs." Appellant's witness, Randall Sweeney, former chairman of the BTA, testified that "only after * * * [appellant] assumed the position * * * did * * * [procedural] problem[s] ease considerably." During the administrative hearing, appellant acknowledged that a report he submitted as part of his liaison duties included recommendations to the BTA. Appellant also acknowledged that he set his own schedule when performing his liaison function.

---

1. The record indicates that, at the time appellant was initially hired as an Administrative Assistant 2 and at the time he was promoted to the position of Administrative Assistant 4, appellant's status was designated as unclassified.

In addition to the liaison program, one of appellant's primary responsibilities concerned the BTA's fiscal operations. More specifically, appellant testified that he served as budget officer, payroll officer, and coordinator of fiscal and personnel functions for the BTA. Appellant further stated that he supervised expenditures, the voucher system, and "oversaw the preparation of the budget."

Kiehner Johnson, the Chairman of the BTA, testified that the BTA's fiscal officer reported to appellant, and that appellant "acted as the check and balance to assure us that so far as the financial affairs of the board were concerned that they were being properly carried out." According to Sweeney, appellant's duties included ensuring that the budget complied with state requirements.

Pohler testified that appellant was "the lead person on the budget" and that he was responsible for writing the BTA's 1992–1993 biennium budget. Johnson also testified that appellant was responsible for the development of the biennial budget and the evolution of the budget approval process. The evidence also indicated that appellant was the BTA's liaison with the Office of Budget and Management and with the Legislative Budget Office. Pohler testified that appellant would respond to any questions that arose with the Office of Budget and Management concerning the budget and further indicated that "all fiscal matters with O.B.M. were specifically Mr. Gillivan's." Sweeney testified that appellant was "the mouthpiece in relaying what the board delineated as its policy with regard to the budget request." Appellant acknowledged that he had dealings with individuals from the Office of Budget and Management and the Legislative Budget Office regarding the budget process. Johnson noted that he met with appellant before appearing before the Senate concerning the BTA budget. Further, appellant appeared with Johnson before the Senate to respond to possible budget questions (although the record indicates that appellant was not asked any such questions).

The record also indicates that appellant oversaw the voucher system at the BTA. Appellant testified that he was responsible for paying the day-to-day bills of the BTA, and that "I had the responsibility to oversee payment disbursements." Further, Pohler testified that appellant was given total responsibility for audit matters involving the BTA. According to Sweeney, appellant was responsible for providing records to the State Auditor's Office in response to requests.

Concerning appellant's supervision by the BTA over the budget, Pohler testified that the appellant "had complete authority to do whatever." Johnson testified that the BTA "did rely on Mr. Gillivan's judgment and his ability to * * * develop a favorable budget for the board, which, indeed, he did."

R.C. 124.11 provides in pertinent part:

"The civil service of the state and the several counties * * * shall be divided into the unclassified service and the classified service.

"(A) The unclassified service shall comprise the following positions, which shall not be included in the classified service, and which shall be exempt from all examinations required by this chapter:

"* * *

"(9) The deputies and assistants of elective or principal executive officers authorized to act for and in the place of their principals, or holding a fiduciary relation to such principals and those persons employed by and directly responsible to elected county officials and holding a fiduciary or administrative relationship to such elected county officials, and the employees of such county officials whose fitness would be impracticable to determine by competitive examination * * *."

In *Beery v. Ohio Bd. of Chiropractic Examiners* (1990), 66 Ohio App.3d 206, 209–210, 583 N.E.2d 1083, 1084–1085, this court noted the following concerning R.C. 124.11(A)(9) and the issue of fiduciary relationships:

"R.C. 124.11(A)(9) specifies two types of relationships which allow exemption from classified civil service. One such exemption is administrative and the other is fiduciary. * * * In this case, the first clause of R.C. 124.11(A)(9) is applicable since we are not dealing with county officials. Thus, those persons holding a fiduciary relationship to the board, or authorized to act for it, may be exempted from civil service requirements.

"In addressing the issue of fiduciary relationships, the Supreme Court has held:

"'In determining whether a fiduciary relationship exists between a public official and his appointed employees pursuant to R.C. 124.11(A)(9), which would exempt such employees from civil service status, emphasis should be placed upon whether the assigned job duties require, as essential qualifications over and above technical competency requirements, a high degree of trust, confidence, reliance, integrity and fidelity.' * * *

"The employee charged with this special position of trust attains a position of superiority or influence, performs discretionary duties beyond the mere routine, and functions in a capacity not expected of the ordinary employee. * * *"

In the present case, the SPBR hearing examiner concluded that appellant's duties in administering the county auditor liaison program and his duties involving fiscal matters, including the BTA budget, demonstrated that appellant had a fiduciary relationship with his employer. More specifically, the hearing examiner found that the evidence indicated that appellant was essentially unsupervised in

his duties with the county auditor liaison program, and that the BTA decided upon an essential policy to improve its procedure with the county auditors and then entrusted appellant solely with the responsibility of implementing the policy and reporting the results to the BTA. The hearing examiner concluded that the BTA's actions in entrusting appellant with this program reflected a high degree of trust and reliance upon appellant beyond the technical competency required to prepare and administer a survey. The trial court, in its decision affirming the order of the SPBR, noted testimony by Pohler and Johnson that the BTA relied upon appellant's judgment and discretion in meeting the needs of the county auditors. The court further noted evidence indicating that appellant's day-to-day activities regarding the liaison program were unsupervised by the BTA.

Concerning appellant's fiscal responsibilities, the SPBR hearing examiner noted appellant's extensive involvement in every facet of this area, including payroll duties, voucher verification, budget preparation, interacting on behalf of the BTA with the Office of Budget and Management and the Legislative Budget Office and appearing at legislative hearings on the budget and dealing with audit matters. The hearing examiner found that the BTA relied on appellant's expertise in fine-tuning the budget and shepherding the BTA's budget and the BTA's concerns through the budget process. The examiner further noted that no other employee was entrusted with such wide-ranging fiscal responsibility designed to protect the BTA and its members from their individual liabilities in the case of any fiscal defaults. The trial court, in reviewing the hearing evidence, noted testimony that the BTA relied on appellant's judgment and ability to develop a favorable budget, and the court cited evidence regarding appellant's responsibilities in getting the budget through the Office of Budget and Management and the legislative process. The court also cited testimony regarding appellant's responsibilities during the state audit process.

While appellant makes general assertions that his duties with the BTA were mostly ministerial, involving routine or mundane matters, a review of the record indicates otherwise, and supports a finding that appellant exercised a high degree of discretion in carrying out his duties with the BTA and that his position required a high degree of trust, confidence, reliance and fidelity. Accordingly, the trial court did not abuse its discretion in concluding that the order of the SPBR, finding that appellant occupied a fiduciary relationship with his employer, was supported by reliable, probative and substantial evidence and was in accordance with law. Appellant's assignment of error is overruled.

Based upon the foregoing, appellant's single assignment of error is overruled, and the judgment of the trial court, affirming the order of the SPBR, is hereby affirmed.

*Judgment affirmed.*

PETREE, J., concurs.

TYACK, J., dissents.

TYACK, Judge, dissenting.

Since I reach a different result based upon the record before us, I respectfully dissent.

The testimony before the hearing examiner with the State Personnel Board of Review ("SPBR") demonstrated that Gillivan was at all times an exemplary employee of the Ohio Board of Tax Appeals ("BTA"). While Randall Sweeney was the Chairman of the BTA, the quality of Gillivan's service earned him a high degree of trust from the BTA, and Gillivan did function in a fiduciary capacity. After the chairmanship of the BTA changed to someone of a different political persuasion, Gillivan was no longer treated as a trusted employee, and his relationship ceased being that which could be labelled "fiduciary." Indeed, the liaison program to the county auditor could be viewed or used as an effort to get Gillivan out of the office and onto the highway in order to minimize his potential influence.

The removal of trust from the relationship between Gillivan and the majority of the BTA also changed his responsibilities with the BTA in regard to the budget from that of a fiduciary to that of one who performs a series of ministerial tasks. His work was not automatically trusted, but was carefully scrutinized. His input to the decision made was minimal.

Because trust was no longer present, Gillivan became a classified employee, not an unclassified employee whose unclassified status depends on a fiduciary relationship. Since he was serving as a classified employee when his employment was terminated, and no indication is present that his service was less than exemplary, he should not have had his employment terminated. See *Hitchens v. Ohio Dept. of Transp.* (Oct. 14, 1993), Franklin App. No. 93AP–315, unreported, 1993 WL 418368.

As a result, I would reverse the judgment of the trial court below and remand the case with instructions that the action be returned to the SPBR for a hearing on its merits.