SHELBY ASSOCIATION OF SCHOOL SUPPORT, OEA/NEA, Appellee,

v.

SHELBY CITY BOARD OF EDUCATION, Appellant, et al.

SHELBY ASSOCIATION OF SCHOOL SUPPORT, OEA/NEA, Appellee,

v.

SHELBY CITY BOARD OF EDUCATION;

State Employment Relations Board, Appellant.

[Cite as *Shelby Assn. of School Support, OEA/NEA v. Shelby City Bd. of Edn.* (1995), 104 Ohio App.3d 329.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 94APE11–1684, 94APE11–1692.

Decided May 25, 1995.

*Cloppert, Portman, Sauter, Latanick & Foley, Mark A. Foley* and *Susan Hayest Kozlowski,* for appellee Shelby Assn. of School Support, OEA/NEA.

*Means, Bichimer, Burkholder & Baker Co., L.P.A.,* and *Kimball H. Carey,* for Shelby City Board of Education.

*Betty D. Montgomery,* Attorney General, and *Gary E. Brown,* Assistant Attorney General, for State Employment Relations Board.

CLOSE, Judge.

This is a consolidated appeal from a judgment of the Franklin County Court of Common Pleas, where that court determined that the order of the State Employment Relations Board ("SERB") in this matter was not supported by substantial, reliable and probative evidence and was not in accordance with law.

The relevant facts are undisputed. The Shelby City Board of Education ("board") is a public employer within the meaning of R.C. 4117.01(B). For the period July 1, 1991 through June 30, 1994, the board and the Shelby Association of School Support, OEA/NEA ("union"), as the certified representative of all school bus drivers employed by the board, were parties to a collective bargaining agreement, which provides in pertinent part:

"ARTICLE XXII—EXTRA CURRICULAR DRIVING:

"22.01 For extra curricular driving: athletic events, band trips, field trips, etc., driver employees will be paid $10.00 an hour for actual driving time calculated to the nearest ¼ hour. * * * Extra curricular trips which are not scheduled during a regular bus run will be offered to the most senior regular driver employees before being offered to substitute drivers according to the procedure below.

"All extra curricular driving shall be offered on a rotation basis, beginning with the most senior driver employee. Driver employees refusing an extra curricular driving assignment during the rotation shall not be offered another extra curricular driving assignment until their next turn in the rotation."

Pursuant to the agreement, no disciplinary action may be taken against any bus driver who individually declines an extracurricular driving assignment. However, upon a driver's refusal to accept such an assignment, that driver is moved to the end of the list as if the assignment had been accepted and is not offered another extracurricular run until his or her next turn in the rotation. Forfeiture of a driver's turn in the rotation is the only penalty for refusal.

The collective bargaining agreement also contains a provision entitled "ARTICLE XXXIII—NO STRIKE OR LOCK OUT CLAUSE," which reads in pertinent part:

"33.01 The Union hereby agrees that it will not directly or indirectly encourage or assist in any way, nor shall any employee initiate or participate, either directly or indirectly, in any strike, slowdown, walk out, work stoppage, or other concerted interference with or withholding of services from the Board or any type of activity which results in a reduction of the regular professional duties or employment obligations of any district employees, during the term of this contract."

During the 1993–1994 school year, the board implemented a number of cost reduction measures which included a reduction in force and the elimination of high school busing. While these measures did not result in any bus driver layoffs, they did cause a reduction in hours. In response to the board's cutbacks, the bus drivers organized a meeting at which the drivers voted to withhold their services for extracurricular driving assignments. The purpose of this action was to protest the reductions and to coerce the board's compliance with certain economic demands.

Thereafter, a series of meetings were held for the purpose of reaching a compromise between the drivers and the board. By September 22, 1993, those attempts yielded no solution to the dispute. Consistent with their vote, a number of bus drivers scheduled for extracurricular assignments removed themselves from the list. Attempts to replace those drivers proved unsuccessful as the remaining drivers on the rotation exercised their right to refuse the assignments. On September 24 and 25, no drivers reported to transport students to scheduled athletic events. As a result of the drivers' refusal, substitute and charter drivers were retained to perform the assignments. However, the union drivers continued to report for their regular routes. Those regular professional duties were performed continuously and without disruption.

On September 27, 1993, the board filed a Request for Determination of Unauthorized Strike pursuant to R.C. 4117.23. In support of its request, the board argued that the concerted refusal of the drivers to perform extracurricular runs constituted an unlawful strike since it occurred mid-term in the parties'

contract. Finding the board's position to be well taken, SERB determined that the drivers had participated in an unauthorized strike.

R.C. 4117.01(H) defines a "strike" as:

"*[C]oncerted* action in failing to report to *duty;* willful absence from one's position; stoppage of work; slowdown, or abstinence in whole or in part from the full, faithful, and proper performance of the *duties of employment* for the purpose of inducing, influence, or coercing a change in wages, hours, terms and other conditions of employment. * * * " (Emphasis added.)

In finding that a strike had occurred, SERB noted that the unified refusal of the drivers to accept extracurricular runs constituted a concerted action since the refusal had its genesis in the collective agreement made at the drivers' meeting. SERB further noted that the action of the drivers was aimed at inducing or coercing the board's compliance with certain economic demands. These findings have gone unchallenged. However, this case turns on SERB's determination with regard to the issue of duty.

SERB found that the acceptance of extracurricular runs amounted to a duty of employment. Although drivers were immune from discipline for refusing extra assignments on an *individual* basis, SERB found that the drivers were under a duty to refrain from collectively eliminating the pool of drivers available to perform the runs. Based on these findings, SERB held that the action of the drivers constituted an unauthorized strike.

The union appealed the SERB order to the Franklin County Court of Common Pleas. That court reversed SERB's determination that an unauthorized strike had occurred. SERB and the board filed separate notices of appeal, which have been consolidated for this proceeding. As its challenge to the decision of the common pleas court, SERB raises the following assignments of error:

"First Assignment of Error

"The trial court erred when it concluded that the job action in the instant case was not a strike because, as a matter of fact and law, the concerted refusal of the bus drivers to drive any extracurricular runs as a means of obtaining economic concessions from the school board constituted a 'strike' within the meaning of R.C. 4117.01(H).

"Second Assignment of Error

"The trial court abused its discretion in this case when it reversed the State Employment Relations Board's R.C. 4117.23 determination of unauthorized strike because said determination of unauthorized strike is supported by substantial evidence and is otherwise in accordance with law."

The board assigns as error:

"1. The trial court erred in failing to find, after giving due deference to the administrative interpretation of the applicable law, that the agency decision in question was supported by reliable, probative, and substantial evidence, and was otherwise in accordance with law, and to accordingly affirm the agency decision.

"2. The trial court erred in failing to find that the simultaneous, concerted refusal of school bus drivers of the Shelby City School District to drive field trips and extracurricular activity runs, for the specific purpose of influencing the Shelby City Board of Education with respect to wages, hours, and other terms and conditions of employment, constituted an unlawful mid-term 'strike' as defined by Section 4117.01(H) of the Ohio Revised Code and prohibited by Sections 4117.14(B)(3), 4117.15(A), and 4117.18(C) of the Ohio Revised Code."

Despite presentation of this appeal as separate assignments of error, the dispositive issue is whether the bus drivers' refusal to drive extracurricular assignments constituted a strike within the meaning of R.C. 4117.01. As such, the assignments of error will be considered and addressed together.

On appeal from an administrative order, the function of an appellate court is somewhat limited since the court of common pleas serves as the first forum for review. While it is incumbent on the common pleas court to weigh the evidence and determine whether the agency order is supported by substantial, reliable and probative evidence, such is not the charge of the court of appeals. Rather, the standard of review for an appellate court is whether the trial court has abused its discretion. *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260, 533 N.E.2d 264, 266. Absent an abuse of discretion, the court of appeals must affirm the trial court's judgment if it is in accordance with law.

The question becomes whether the drivers' failure to volunteer for extracurricular runs constitutes a strike. Appellants' focus on the "concerted action" of the drivers is misplaced. Concerted action does not, in and of itself, constitute a violation of the collective bargaining agreement. Clearly, there are circumstances under which the drivers could act in concert without violating the contract. Rather, resolution of this issue turns on whether such voluntary activities were a "duty" of employment. If so, the action of the drivers must be deemed a strike within the meaning of R.C. 4117.01(H).

The collective bargaining agreement in effect at the time of the drivers' action clearly confers the right to refuse extracurricular driving assignments. Due to the voluntary nature of such assignments, it cannot be said that the runs were "duties" of the drivers' employment. This outcome is consistent with the opinion in *In re Amalgamated Transit Union, Local 272, Emp. Org. and W. Res. Transit*

*Auth.* (May 23, 1990), SERB No. 90–007, wherein SERB characterized a duty as follows:

"A 'duty' or 'duties of employment' as used in O.R.C. § 4117.01(H) cannot be so broadly construed as to render obligatory what the parties in their contract specifically designated as optional.

"When a collective bargaining agreement explicitly provides employees with the right of choice in respect to certain work, exercising that choice, regardless of what the choice may be, cannot be considered a violation of 'the full, faithful and proper performance of the duties of employment' under O.R.C. § 4117.01(H), and hence is not a strike. In the case at issue, the collective bargaining agreement gives the regular operators the option to work overtime. Exercising this contractual option, whether by volunteering to work overtime or by refraining from doing so, complies with the duties of employment as agreed by the parties in their contract and, thus, cannot constitute a strike.

"There were no allegations that the employees failed to report for their regular shifts nor that they performed their duties in less than an acceptable fashion. Their required duties were fully discharged and there was no 'abstinence in whole or in part' from their regular assignments.

"[The public employer] argued that even though overtime is voluntary under the contract, the absence of employees to work overtime constitutes a strike since it has been past practice for the drivers to sign up for overtime work. This argument is not well taken. Even if it has been past practice for the drivers to sign up for overtime work, it was always voluntary and done by choice. Thus, the element of choice, which includes the option not to sign up for overtime work, is as much past practice as the signing up.

"To define the employees' exercise of choice as a strike action might result in committing them to perform optional overtime work or subjecting them to possible punishment for withholding a service they were under no obligation to give."

The reasoning of *W. Reserve* is sound and, in light of the voluntary nature of the activities at issue herein, the common pleas court did not err in applying it to the instant case. Appellants have offered no persuasive reasoning to support their argument that *W. Reserve* is inapposite. Exercising the right to decline voluntary service is not a violation of the "full, faithful and proper performance of the duties of employment" within the meaning of R.C. 4117.01(H). An unauthorized strike is a concerted withholding of the performance of the duty. In this case, no duty to perform extracurricular driving exists. As such, the refusal to render such voluntary service cannot be construed as a strike.

For the foregoing reasons, the trial court did not err in holding that the SERB decision was not supported by reliable, probative and substantial evidence and, as such, was not in accordance with law.

Appellants' assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

PEGGY BRYANT and LAZARUS, JJ., concur.