GUANZON, Appellant,

v.

STATE MEDICAL BOARD OF OHIO, Appellee.

[Cite as *Guanzon v. State Med. Bd. of Ohio* (1997), 123 Ohio App.3d 489.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APE01–24.

Decided Sept. 30, 1997.

*Kevin P. Byers Co., L.P.A.*, and *Kevin P. Byers*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Rebecca J. Albers*, Assistant Attorney General, for appellee.

---

PETREE, Judge.

Appellant, Noel A. Guanzon, M.D., appeals from a judgment of the Franklin County Court of Common Pleas affirming the decision of appellee, State Medical Board of Ohio. Appellant sets forth the following assignments of error:

1. "The trial court abused its discretion and erred to appellant's prejudice when it found the order of the State Medical Board of Ohio is supported by reliable, probative, and substantial evidence."

2. "The trial court abused its discretion and erred to appellant's prejudice when it found the order of the State Medical Board of Ohio is in accordance with law."

On June 21, 1994, appellant submitted an application for a license to practice medicine in the state of Ohio with the Ohio board. At that time, appellant was licensed to practice medicine in the state of West Virginia. Sometime prior to the filing of his Ohio application, appellant was notified by the West Virginia Board of Medicine that one of his former patients had filed a complaint against him.

In July 1994, appellant was served with a subpoena *duces tecum* requiring him to produce certain documents regarding his care and treatment of ten different patients. Thereafter, on August 2, 1994, the West Virginia Board of Medicine notified appellant that he was required to appear before its complaint committee in September. The complaint committee subsequently determined that probable cause existed for disqualifying appellant from the practice of medicine and notified him of this determination on September 19, 1994.

Rather than face disciplinary action, appellant elected to surrender his West Virginia medical license. Accordingly, appellant executed a consent decree surrendering his license on January 31, 1995. This consent decree was subsequently approved by the West Virginia Board on March 13, 1995.

During the pendency of the West Virginia proceedings, appellant's Ohio application was considered by the Ohio board, and appellant was granted a license to practice medicine in Ohio on October 12, 1994. Approximately one year later, appellant was asked to execute a release permitting the Ohio board to obtain copies of documents relevant to the West Virginia proceedings. Apparently, the Ohio board had learned of the consent decree from the West Virginia Board of Medicine.

In December 1995, the Ohio board notified appellant of its intention to bring proceedings necessary to revoke his license to practice medicine in the state of Ohio. An evidentiary hearing was held before an attorney hearing examiner on April 5, 1996, and a decision was issued on April 24, 1996. The hearing officer's report contains the following conclusions of law:

"1. Findings of Fact 1 through 7 support a conclusion that Dr. Guanzon's conduct constitutes 'fraud, misrepresentation, [and] deception in applying for or securing any license or certificate issued by the board,' as that clause is used in Section 4731.22(A), Ohio Revised Code.

"2. In addition, Findings of Fact 1 through 7 support a conclusion that Dr. Guanzon's conduct constitutes a failure to furnish satisfactory proof of good moral character as required by Section 4731.08, Ohio Revised Code."

The hearing examiner recommended that appellant's license to practice medicine in the state of Ohio be permanently revoked, and the Ohio board adopted that recommendation. Appellant appealed to the Franklin County Court of Common Pleas from the order of the Ohio board, pursuant to R.C. 119.12. The common pleas court affirmed the Ohio board's order. Appellant appeals to this court from the judgment of the common pleas court.

The standard of review of appeals from decisions of the state medical board regarding licensing was set forth by this court in In re Wolfe (1992), 82 Ohio App.3d 675, 683–684, 612 N.E.2d 1307, 1312–1313:

"R.C. 119.12 establishes the scope of review on appeals from the medical board's denial of a license application and provides that the trial court may affirm the order if it finds, upon consideration of the entire record, that the order is supported by reliable, probative and substantial evidence and is in accordance with law. In the absence of such a finding, the trial court may reverse, vacate or modify the order, or make such other ruling as is supported by reliable, probative and substantial evidence and is accordance with law.

" * * *

"In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order. It is incumbent upon the trial court to examine the evidence; however, this is not the charge of

the appellate court. The appellate court's function is to determine only if the trial court abused its discretion. *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 533 N.E.2d 264. An abuse of discretion connotes more than an error of judgment; it implies a decision which is without a reasonable basis or one which is clearly wrong. *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 11 OBR 242, 463 N.E.2d 1280."

■ Appellant's assignments of error are interrelated, and we will consider them jointly. Appellant first contends that the hearing examiner's determination that he committed fraud, misrepresentation, and deception in securing his Ohio medical license is not supported by reliable, probative, and substantial evidence. We disagree.

The application submitted by appellant on June 21, 1994, was admitted into evidence at the administrative hearing. The application contains the following questions:

"10. Have you ever been requested to appear before any board, bureau, department, agency, or other body, including those in Ohio, concerning allegations against you?

" * * *

"12. Have you ever been notified of any investigation concerning you by, or have you ever been notified of any changes, allegations, or complaints filed against you with, any board, bureau, department, agency, or other body, including those in Ohio, with respect to a professional license?"

At the hearing, appellant admitted that he responded in the negative to both of these questions.

The evidence also establishes that each applicant must execute an affidavit, wherein the applicant states:

"I further understand that my application for a license to practice medicine or osteopathic medicine in the State of Ohio is an ongoing process. I will immediately notify the State Medical Board of Ohio in writing of any changes to the answers to any of the questions contained in the ADDITIONAL INFORMATION section of the application if such a change in an answer is warranted at any time prior to licensure being granted to me by the State Medical Board of Ohio."

Finally, there is evidence in the record that each applicant for medical license receives a set of instructions. These instructions provide:

"3. Additional Information Section:

"Please keep a copy of the Additional Information questions for your own reference. You must immediately notify the State Medical Board of Ohio in

writing of any changes to the answers to these questions that may be warranted prior to licensure being granted to you by the State Medical Board of Ohio."

R.C. 4731.22(A) provides:

"(A) The state medical board, pursuant to an adjudication under Chapter 119. of the Revised Code and by a vote of not fewer than six of its members, *may revoke* or may refuse to grant *a certificate to a person found by the board to have committed* fraud in passing the examination or to have committed *fraud, misrepresentation, or deception in applying for or securing any license or certificate issued by the board."* (Emphasis added.)

This court has recognized that the Ohio board may revoke a license to practice medicine where the applicant fails to fully disclose, during the application process, the existence and nature of disciplinary proceedings brought against the applicant by another medical board. *In re Wolfe, supra,* 82 Ohio App.3d at 687, 612 N.E.2d at 1315–1316.

In this case, the hearing examiner concluded that appellant failed to timely notify the Ohio board of the West Virginia proceedings and that such conduct constituted fraud, misrepresentation, and/or deception on the part of appellant in securing his medical license. In support of this conclusion, the hearing examiner specifically found that appellant was informed as early as the fall of 1993 that the West Virginia Board of Medicine was conducting an investigation of complaints filed against appellant by a former patient. Although appellant claimed that he did not know that an investigation had been commenced prior to filing his Ohio application, evidence in the record supports the hearing examiner's finding. Indeed, appellant testified at the administrative hearing, as follows:

"Q. [BY MS. WASHINGTON] Dr. Guanzon, before you filed your application with the Ohio Board, had you ever been notified by the West Virginia Board that there were allegations that had been made against you?

"A. Yes.

"Q. Would you explain the circumstances of that?

"A. Around the fall of '93, I received a letter from the West Virginia Board notifying me that the complainant filed against me concerning a certain patient, initials IP, charging me with giving a prescription at the mall and a prescription that she didn't need.

"I immediately wrote back to the Board my reply that all the allegations were false, and after that, I waited for any reply or anything. And I hadn't heard anything from the West Virginia Board until I got this subpoena."

As stated above, question No. 12 in the Ohio application asked in part, "Have you ever been notified of any investigation concerning you by * * * any board, bureau, department, agency or other body * * * with respect to a professional

license?" Appellant answered this question in the negative, even though he had been previously notified that a patient complaint was being investigated by the West Virginia Medical Board. Accordingly, appellant's own testimony supports the hearing officer's finding and conclusion.

Appellant claims that he did not realize that he was under investigation until September 19, 1994, at the earliest, when he was notified of the West Virginia Medical Board's intent to proceed with the revocation proceedings. Appellant argues that, because he did not know of these proceedings until after his application was filed, he cannot be found to have misled or deceived the Ohio board. We disagree.

As stated above, there was ample evidence in the record to support the hearing officer's finding that appellant actually knew of the West Virginia investigation before he filed his Ohio application. Nevertheless, even if we were to accept appellant's testimony as true, appellant admits that he learned of the West Virginia investigation while his application was still pending with the Ohio board. Indeed, appellant admits that he knew about the investigation on September 19, 1994, almost one month before his Ohio application was granted.

Appellant's contention that he was under no duty to inform the Ohio board of the West Virginia proceedings flies in the face of the written instructions provided to him when he completed his application and the affidavit he filed with his application. The instructions required appellant to "immediately notify the State Medical Board of Ohio in writing of any changes to the answers to any of the questions * * * [that may be] warranted at any time prior to licensure being granted." In his affidavit, appellant promised to "immediately notify the State Medical Board of Ohio in writing of any changes to the answers to any of the questions contained in the ADDITIONAL INFORMATION section of the application if such a change in an answer is warranted at any time prior to licensure being granted."

Appellant argues alternatively that the term "immediately" is too vague and imprecise to put him on notice of what was expected of him by the Ohio board and that his failure to update his application is excused because of the use of this vague and imprecise language. This argument is completely without merit.

Generally, words appearing in an administrative regulation are given their plain and ordinary meaning. *State ex rel. Weich Roofing, Inc. v. Indus. Comm.* (1990), 69 Ohio App.3d 281, 590 N.E.2d 781. The court of appeals will pay due deference to the reasonable construction by an administrative agency interpreting its own rules. *McAuliffe v. Bd. of Pub. Emp. Retirement Sys. of Ohio* (1994), 93 Ohio App.3d 353, 638 N.E.2d 617.

Although the hearing examiner did not expressly interpret the term "immediately," the report does conclude that appellant violated his duty to timely notify

the Ohio board of the West Virginia proceedings. As stated above, appellant made no attempt to inform the Ohio board of the West Virginia proceedings at any time during the application process, even though he learned of those proceedings, at the latest, several weeks before his application was approved. In our view, the hearing officer's implied interpretation of the term "immediately" as something less than three weeks is certainly reasonable, and we find that the hearing officer rightly decided this issue. *McAuliffe, supra.*

■ Appellant next contends that he was denied due process because the Ohio board failed to notify him that it would be considering the merits of the complaints filed against him in West Virginia in reviewing his Ohio medical license. Apparently, appellant believes that the conclusion that he failed to prove his good moral character was based on the hearing officer's finding that appellant rendered substandard care in West Virginia.[1] However, it is clear from the transcript and the hearing examiner's report that the hearing examiner's conclusion was based on appellant's failure to notify the Ohio Board of the West Virginia proceedings, not on a finding of substandard care. Consequently, appellant's due process right to notice was not violated in this matter.

Appellant next contends that the Ohio board prejudiced his right of appeal by not certifying a complete record of its proceedings to the common pleas court as required by R.C. 119.12. Appellant moved this court, pursuant to App.R. 9(E) to supplement the record herein with documents that he claimed were improperly omitted from the certified record of the Ohio board. Appellant's motion was denied by this court in a journal entry dated February 5, 1997, because the disputed documents were not made part of the trial court record. In short, there is nothing in this record on appeal to support appellant's argument.

Finally, appellant claims that the penalty of permanent revocation of his medical license is disproportionate to the wrong and, thus, contrary to law.

In *Brost v. Ohio State Med. Bd.* (1991), 62 Ohio St.3d 218, 221, 581 N.E.2d 515, 518, the Ohio Supreme Court found that "the General Assembly intended that the sanction selected by the board be proportionate to the prohibited act or acts committed by the doctor." Appellant has cited several other cases where the Ohio board has imposed less severe sanctions for violations of R.C. 4731.22(B).

---

1. R.C. 4731.08 provides:

"Except as provided in sections 4731.29 and 4731.291 to 4731.294 of the Revised Code, each person who desires to practice medicine and surgery or osteopathic medicine and surgery in this state shall file with the secretary of the state medical board a written application for admission to the examination conducted by the board under section 4731.13 of the Revised Code. The applicant shall file the application under oath on a form prescribed by the board. *The applicant shall furnish evidence satisfactory to the board that he is more than eighteen years of age and of good moral character.*" (Emphasis added.)

None of the cases cited by appellant involves a violation of R.C. 4731.22(A). Thus, each of these cases is distinguishable.

■ Moreover, the nature of the violation in this case justifies, in our view, a severe sanction. Indeed, the violation involves deception, fraud, and dishonesty by appellant in his dealings with the state licensing authority. Acts of deception by an applicant in securing a medical license put the public at a substantial risk of harm. Under the circumstances, we cannot say that the penalty imposed was so severe as to be out of all proportion to the wrong.

The question arises, however, whether the Ohio board may permanently revoke appellant's medical license for violation of R.C. 4731.22(A), where the language of that section provides only for revocation. In *Roy v. Ohio State Med. Bd.* (1995), 101 Ohio App.3d 352, 355, 655 N.E.2d 771, 773, this court concluded that the Ohio board has the statutory authority to permanently revoke a physician's medical license for violations of R.C. 4731.22(B), even though the language of that section provides for revocation only. *Id.* at 355, 655 N.E.2d at 773. In our opinion we stated that "the authority granted the board under R.C. 4731.22(B) to revoke a physician's license to practice medicine includes the authority to revoke it permanently."

■ We believe that the reasoning of our opinion in *Roy* applies with equal weight here since the same operative language appears in both subsection (A) and subsection (B). Accordingly, we conclude that the Ohio board has the statutory authority to permanently revoke a physician's license for violation of R.C. 4731.22(A).[2]

For the foregoing reasons, we conclude that the Ohio board's order is supported by reliable, probative, and substantial evidence and is in accordance with law. Therefore, the common pleas court did not abuse its discretion in affirming that order. Appellant's assignments of error are overruled.

Having overruled appellant's assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BOWMAN, J., concurs.

TYACK, P.J., concurs in part and dissents in part.

---

2. As a caveat we express some doubt as to the constitutionality of a statute that prescribes permanent revocation, without the possibility of reinstatement. *Id.* In *Roy, supra,* we determined that the constitutionality of R.C. 4731.22(B) was not ripe for review since the physician in that case had not yet applied for reinstatement. *Id.* For the same reasons, the constitutionality of the R.C. 4731.22(A) is not an issue which is ripe for review since appellant has filed no application for reinstatement. *Id.* at 355, 655 N.E.2d at 773.

TYACK, Presiding Judge, concurring in part and dissenting in part.

While I agree that the Ohio State Medical Board had the right to revoke Dr. Guanzon's medical license as a result of his failure to reveal the proceedings in West Virginia, I do not believe that the Ohio State Medical Board has the power to revoke a medical license permanently for errors made in conjunction with the application process.

R.C. 4731.22(A) reads:

"The state medical board, pursuant to an adjudication under Chapter 119. of the Revised Code and by a vote of not fewer than six of its members, may revoke or may refuse to grant a certificate to a person found by the board to have committed fraud in passing the examination or to have committed fraud, misrepresentation, or deception in applying for or securing any license or certificate issued by the board."

If a physician's deception in regard to the application process is discovered before the Ohio State Medical Board acts upon the application, the application is simply denied. This denial, however, is not a permanent bar to submitting future applications. I believe that R.C. 4731.22(A) does not contemplate permanent revocation of a physician's license as a remedy for deception in regard to the application process, whether the deception is discovered before or after licensure.

R.C. 4731.22(B) states:

"The board, pursuant to an adjudication under Chapter 119. of the Revised Code and by a vote of not fewer than six members, shall, to the extent permitted by law, limit, revoke, or suspend a certificate; refuse to register or refuse to reinstate an applicant, or reprimand or place on probation the holder of a certificate for one or more of the following reasons."

Arguably, permanent revocation is justified for some of the violations which are listed thereafter. However, these violations that adjudicated before the Ohio State Medical Board, allowing for a modicum of due process of law.

The quality of Dr. Guanzon's patient care in West Virginia has never been adjudicated. Dr. Guanzon made a decision not to contest the allegations and executed a consent decree surrendering his license only after he had been granted a license to practice medicine in Ohio. His decision to avoid the time and expense involved in contesting the West Virginia allegations could well be related to pragmatic concerns, not to a belief that his medical care had been deficient.

In short, I would sustain the second assignment of error in part. I would reverse the decision of the Ohio State Medical Board to the extent that it purports to make revocation of Dr. Guanzon's license permanent because I believe a permanent revocation is not in accordance with law for situations

involving R.C. 4731.22(A). Since the majority opinion does not do so, to that extent, I respectfully dissent.