[Cite as *Washington-Centerville Pub. Library v. Washington-Centerville Pub. Library Staff Assn.*, 2014-Ohio-2074.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Washington-Centerville Public Library, :

      Appellant-Appellant, :

                                        No. 13AP-657

v. : (C.P.C. No. 12 CV 000178)

Washington-Centerville Public Library : (REGULAR CALENDAR)
Staff Association et al.,

                                       :

      Appellees-Appellees.

D E C I S I O N

Rendered on May 15, 2014

*Taft Stettinius & Hollister, LLP*, and *Timothy G. Pepper,* for appellant.

*Michael DeWine*, Attorney General, and *Lisa M. Critser,* for appellee State Employment Relations Board.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} In this R.C. Chapter 119 appeal, appellant Washington-Centerville Public Library ("the library"), appeals the judgment of the Franklin County Court of Common Pleas affirming an order of appellee State Employment Relations Board ("SERB"). We find that the common pleas court did not err in exercising its subject-matter jurisdiction of this R.C. 119.12 appeal and we affirm its judgment.

## I. Facts

### A. *Underlying Facts and Prior R.C. Chapter 119 Appeal*

{¶ 2} In October 2008, the Washington-Centerville Public Library Staff Association ("association"), presented to SERB a petition seeking a representation election to become the certified representative of certain of the library's employees. The

library and the association agreed to an election, and, on March 4, 2009, the election was held. One unit of the library's employees, identified as the Combined Unit of Professional and Non-Professional Unit #1 ("Unit 1"), voted to become unionized.

{¶ 3} On March 13, 2009, the library filed with SERB objections concerning the election, pursuant to Ohio Adm.Code 4117-5-10.[1] Only the second objection became the subject of further litigation. That objection asserted that the association had produced and distributed a campaign flyer that contained false and misleading statements. The library contended that the association, in distributing the flyer, had engaged in an unfair labor practice, i.e., coercive and restraining conduct in violation of R.C. 4117.11(B)(1), that justified the setting aside of the election and the direction of a new election.

{¶ 4} SERB denied the library's post-election objections on the procedural ground that the library should have challenged the campaign flyer by filing an unfair labor practice charge, rather than a post-election objection, pursuant to Ohio Adm.Code 4117-5-10. Having denied the objections, SERB certified the association as the representative of Unit 1 in accord with the election results.

{¶ 5} The library appealed to the common pleas court. In this first R.C. 119.12 appeal, the common pleas court held that the library could challenge the flyer through a post-election objection as an alternative to filing an unfair labor practices charge. The court remanded the matter to SERB with instructions that it further investigate the merits of the library's post-election objection in accord with Ohio Adm.Code 4117-5-10 .

{¶ 6} SERB thereafter investigated whether one or more agents of the association violated R.C. 4117.11(B)(1) by restraining or coercing employees in the exercise of their right to refrain from joining, assisting or participating in an employee organization. The violation alleged was that the association provided false information in the flyer regarding the nature of the association. SERB allowed both parties to submit position statements and evidence in support of their positions. The library submitted no additional evidence but, rather, argued its position based solely on the content of the flyer itself.

---

[1] Ohio Adm.Code 4117-5-10 authorizes the filing of post-election objections following representation elections, which SERB must then investigate. SERB may thereafter "dismiss the post-election objections or challenges, direct the counting of some or all of the challenged ballots, or where warranted, set aside the previous election and direct another election."

{¶ 7}   On December 22, 2011, SERB dismissed with prejudice the library's post-election objection asserting that the association had committed an unfair labor practice during the election campaign and certified the association as the exclusive representative of all employees identified as members of Unit 1.

**B.  *Current R.C. Chapter 119 Appeal***

{¶ 8}   On January 5, 2012, the library initiated an R.C. 119.12 appeal of SERB's December 22, 2011 order by filing a notice of appeal with SERB.  It named the association as an appellee but did not specifically name SERB as an appellee. It did, however, serve SERB with a copy of the notice of appeal.  It also filed a copy of the notice of appeal with the Franklin County Court of Common Pleas.  Counsel for the library certified at the end of the notice of appeal that he had served a copy of the notice on both the association and SERB by facsimile and regular mail.

{¶ 9}   On February 27, 2012, the association filed a motion to dismiss the R.C. 119.12  appeal, asserting that the common pleas court lacked subject-matter jurisdiction because the library had "fail[ed] to name the SERB as a party-appellee."  (Feb. 27, 2012 Motion, 4.) It argued that SERB should have been, but was not, made a party to the appeal and that, because the time for filing a notice of appeal had passed, the common pleas court lacked subject-matter jurisdiction, requiring dismissal of the R.C. Chapter 119 appeal.

{¶ 10} On December 5, 2012, however, the common pleas court ordered the clerk of courts to correct the docket to add SERB as a party.  It further ordered that all previous filings should be deemed to be captioned to include SERB as an appellee.

{¶ 11} On July 1, 2013, the common pleas court rendered a decision rejecting the library's substantive objection to the representation election and entered judgment affirming SERB's order of December 22, 2011. It concluded that the statements in the campaign flyer had  not unlawfully coerced or restrained the employees who had voted in the representation election.  The court observed that the "burden of setting aside an election is a heavy one and falls upon the party attacking it." (July 1, 2013 Decision, 9, citing *Paulding Cty. Bd. of Mental Retardation and Dev. Disabilities v. Ohio Assn. of Pub. School Emp.*, 111 Ohio App.3d 545 (10th Dist.1996).)  It concluded that the library had not met that heavy burden. It observed that the essential facts were undisputed but

that the legal significance of those facts was in dispute. It found that the SERB's certification of the election was lawful and affirmed its order in its entirety.

{¶ 12} The library timely appealed the trial court's July 1, 2013 decision.

## II. Assignment of Error and Analysis

{¶ 13} The library asserts a sole assignment of error as follows:

> The Franklin County Court of Common Pleas erred to the prejudice of Appellant by affirming the Order of the State Employees Relation Board in Case No. 2008-Rep-0171.

{¶ 14} We first address SERB's argument that this appeal should be dismissed for lack of subject-matter jurisdiction. We disagree.

{¶ 15} SERB cites *Haig v. Ohio State Bd. of Edn.*, 10th Dist. No. 89AP-1251 (Aug. 9, 1990), for the proposition that, "with respect to R.C. 119.12 appeals, the proper appellee must be the party charged with the responsibility for making and enforcing the decision from which the aggrieved party appeals." (Feb. 27, 2012 Motion, 5.) SERB further observes that the Supreme Court of Ohio affirmed our decision in *Haig v. Ohio State Bd. of Edn.*, 62 Ohio St.3d 507 (1992). As additional authority, SERB cites our decisions in *All Children Matter v. Ohio Secretary of State*, 10th Dist. No. 09AP-322, 2010-Ohio-371, and *Kingsley v. Ohio Personnel Bd. of Rev.*, 10th Dist. No. 10AP-875, 2011-Ohio-2227.

{¶ 16} We are, however, bound by precedent established by the Supreme Court of Ohio in *Hamilton Cty. Bd. of Mental Retardation & Dev. Disabilities v. Professionals Guild of Ohio*, 46 Ohio St.3d 147 (1989). In that case, the Supreme Court recognized that SERB may participate as a party in an R.C. 119.12 review of its adjudications. The Supreme Court expressly held, however, that "it [SERB] is not a necessary or indispensable party to the review proceedings." *Id.* at 154. In both *Hamilton Cty.* and the instant case, SERB evaluated post-election objections to a certification-election campaign. The facts in the *Haig* cases, *All Children Matter,* and *Kingsley* are distinguishable from the facts in the case before us in that the former cases did not involve the review of a SERB order but, rather, orders of a local board of education, the Ohio Elections Commission, and the State Personnel Board of Review, respectively. Because, pursuant to *Hamilton Cty.*, SERB was neither a necessary nor an indispensable party in these R.C. 119.12 proceedings,

failure of the library to formally name SERB as an appellee in the caption of its R.C. 119.12 notices of appeal did not constitute a defect fatal to the trial court's exercise of R.C. 119.12 subject-matter jurisdiction.

{¶ 17} We turn to the library's substantive argument that SERB should have sustained its post-election objection asserting that the association committed an unfair labor practice by distributing a false and misleading campaign flyer.

{¶ 18} The controlling standards of review in an R.C. 119.12 administrative appeal are well-established. The trial court must review the agency's order "to determine whether it is supported by reliable, probative, and substantial evidence and is in accordance with law." *Fletcher v. Ohio Dept. of Transp.,* 10th Dist. No. 12AP-46, 2012-Ohio-3920, ¶ 8. In reviewing the trial court's order, the court of appeals is confined to determining whether the court of common pleas abused its discretion. *Bryant Health Care Ctr., Inc. v. Ohio Dept. of Job & Family Servs.,* 10th Dist. No. 13AP-263, 2014-Ohio-92, ¶ 23. In determining whether an order was in accordance with law, this court's review is plenary. *Id.* Moreover, in reviewing SERB's orders, "courts must accord due deference to SERB's interpretation of R.C. Chapter 4117. Otherwise, there would be no purpose in creating a specialized administrative agency, such as SERB, to make determinations." *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 267 (1988).

{¶ 19} The information in the flyer was divided into eight sections covering topics such as union membership, dues, strikes, picket lines, and rates. It also addressed issues concerning the governance of the association and suggested that answers to some employee questions concerning the impact of being represented by the association could only be determined after the constitution and bylaws of the association had been adopted. We quote in full section 8 of the flyer as it is the primary focus of the library's objection:

> **8.** *Governance document?*
>
> Because (unlike the library) the staff association will be a bottom-up organization, not a top-down, a governance document (constitution & bylaws) will be created by the members and voted on by the members. This cannot take place until after the association is voted in. The document will contain what the members want it to contain, and it will say what the members want it to say. On March 4, we will only be voting on whether we want to be represented by the staff

> association.  The constitution will come *after* the association
> is in place.

(Emphasis sic.)

{¶ 20} During the SERB investigation, the library argued that the flyer described above contained false and misleading information and, specifically, that it was untrue that governing documents for the association could not be created until after the election.  It argued that the employees were misled into believing that details concerning strikes, collective bargaining, and dues and penalties could not be developed until after the election. It also argued that the flyer incorrectly represented that "[s]trikes can by law, only happen if we have no contract."  (May 27, 2011 letter, 2, SERB R. A161-T9.)

{¶ 21} The library posits three arguments in support of its assignment of error. In its first argument, the library claims that the "trial court sought evidence not relevant to its inquiry." (Appellant's Brief, 9.)  We note that the library does not suggest that the trial court solicited or considered evidence outside of the administrative record, contrary to the mandate of R.C. 119.12, which requires that a common pleas court confine itself to the "record as certified to it by the agency." Rather, the library points to a single clause in the court's decision in  which the court stated that the record lacked "any proof that any voter was in any way 'confused by any campaign assertions' made by the [Association]." (Appellant's Brief, 11, quoting July 1, 2013 Decision, 8.)  The association implies that this statement demonstrates that the trial court affirmed the SERB order based on the fact that the library had failed to submit evidence of voter confusion to SERB.

{¶ 22} We reject the library's premise that the trial court's decision was dependent upon the existence of "required" evidence of any specific nature. Rather, we construe the trial court's statement as indicating more generally that the library had failed to meet its burden of proving that the flyer constituted campaign literature so misleading as to warrant invalidation of the election itself.  This conclusion is reinforced when the clause quoted by the library is placed in the context in which it appears in the court's decision. The court first stated that "[t]he Board's decision is lawful." (July 1, 2013 Decision, 8.)  It then continued: "This is especially so, where the Library relied solely on the submission of the flyer without offering any proof that any voter was in any way 'confused by any campaign assertions' made by the Employee Organization." (Decision, 8.)  In context, we

construe the court's statement as reflecting its belief that evidence of voter confusion arguably would have been relevant to the determinative issue before SERB, that being whether voters had been coerced or restrained in exercising their collective bargaining right to participate in a representation election. But nothing in the trial court's decision warrants the conclusion that the absence of such evidence, in and of itself, was determinative of the court's decision that the library had failed to meet its burden. Rather, after considering the evidence submitted to SERB, and more specifically the fact that the library submitted no evidence of coercion or restraint other than the text of the flyer itself, the court found that SERB correctly "determined that the allegedly misleading information wasn't an unlawful restraint or coercion of the employees' voting rights under R.C. 4117.11(B)(1)." (Decision, 9.)

{¶ 23} The library's second argument challenges the conclusion of both SERB and the court that the flyer circulated by the association did not taint the pre-election environment to a degree requiring the setting aside of the election, even assuming, arguendo, that the flyer contained inaccuracies.

{¶ 24} In its December 22, 2011 certification order, SERB, in describing its evaluation of the campaign flyer, stated as follows:

> [*In re Montgomery County Bd. of Mental Retardation and Developmental Disabilities,* SERB 88-012 (9-15-88)] tells us that when evaluating literature, the Board considers [that] voters possess basic intelligence and the ability to recognize and understand campaign literature for what it is. It further states the Board bears in mind that campaign literature does not exist in a vacuum.
>
> Most voters are aware of the positions of the parties and evaluate campaign materials accordingly. * * * The syllabus of [*Montgomery County*] * * * [provides] that when deciding whether literature distributed during a representation election campaign is misleading and warrants setting the election results aside, the Board assumes voting employees have the native intelligence to accept campaign literature for what it is. * * * [The] Board will not assume that voters examine such literature mindlessly and without discernment, nor will it set aside an election simply because of the possibility an unusually unsophisticated voter might momentarily be confused by certain campaign assertions.

{¶ 25} In *In re Montgomery Cty. Bd. of Mental Retardation and Dev. Disabilities,* SERB 88-012 (9-15-88), SERB further observed that, in view of the guarantee of free speech provided by the First Amendment to the United States Constitution, extreme caution must be exercised in any case that raises the possibility of restricting or penalizing dissemination of information for and against representation. SERB concluded that a "slight misrepresentation" present in a union campaign communication did not warrant the setting aside of an election. *Id.* at 7.

{¶ 26} SERB's order in this case is consistent not only with its order in *Montgomery Cty.* but also with other SERB orders concerning allegedly misleading campaign publications. *See In re Stark Cty. Engineer*, SERB 85-012 (4-4-85) (union letter containing allegedly misleading information and referencing "threats" by the employer, unfair treatment, unfair promotion and unfair wages, did not have a restraining or coercive effect); *In re S. Community, Inc.*, SERB 85-012 (12-6-85) (mailings by union implying that SERB had endorsed the union as the exclusive representative justified setting aside of the election; preservation of SERB's integrity and neutrality is essential to implementation of R.C. Chapter 4117 and mailing interfered with the employees' free choice). Although not binding on our interpretation of Ohio's Collective Bargaining Act, R.C. Chapter 4117, we further note that the Sixth Circuit, in interpreting the federal National Labor Relations Act, 29 U.S.C. 158, has established as the standard in reviewing alleged campaign falsehoods, whether "misrepresentation was so artful in its manner and so pervasive in its effect that it affected the employee's free and fair choice to such an extent as to necessitate setting aside the election." *N.L.R.B. v. Hub Plastics, Inc.,* 52 F.3d 608, 612 (1995). SERB's finding that the flyer at issue herein did not require the direction of a new election is consistent with the standard employed by the Sixth Circuit in interpreting federal collective bargaining law.

{¶ 27} In summary, we concur with SERB and the common pleas court that the allegedly misleading statements in the campaign flyer at issue in this case, which concerned the unions' internal corporate structure and the timing of adoption of its constitution and bylaws, were not statements likely to have influenced the library employees who voted in the representation election by instilling fear or otherwise

restraining or coercing them concerning their vote. Accordingly, SERB did not act unlawfully in overruling the library's post-election objection and certifying the results of the election.

{¶ 28} The library's final argument posits that SERB applied a double standard by not invalidating the election based on the existence of the campaign flyer. It suggests that, had it, as management, provided during the representation election campaign "similar false information," as that contained in the campaign flyer, SERB "would order that a rerun election be conducted." (Appellant's Brief, 18, 20.) Initially, we note the hypothetical nature of this argument. Neither this court, nor the parties, are able to predict SERB's disposition of an allegation of restraint or coercion based on unknown, hypothetical facts. Moreover, in *S. Community, Inc.,* SERB did order a new election on the basis of misleading union campaign action.

{¶ 29} As discussed above, the trial court found that SERB's determination that the representation election was not fatally tainted by the flyer at issue was supported by reliable, probative, and substantial evidence and was in accordance with law. The trial court did not abuse its discretion in affirming that SERB finding.

## III. Conclusion

{¶ 30} For the foregoing reasons, we overrule the library's assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and O'GRADY, JJ., concur.

_____