LORAIN CITY SCHOOL DISTRICT BOARD OF EDUCATION, APPELLEE, *v.* STATE EMPLOYMENT RELATIONS BOARD ET AL., APPELLANTS.

[Cite as Lorain City Bd. of Edn. *v.* State Emp. Relations Bd. (1988), 40 Ohio St. 3d 257.]

(No. 87-1859—Submitted October 18, 1988—Decided December 30, 1988.)

*Warhola, O'Toole, Loughman, Fetterman & Alderman, Michael J. Loughman* and *Caryn G. Pass,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Vincent T. Lombardo,* for appellant SERB.

*Green, Haines, Sgambati, Murphy & Macala Co., L.P.A., Ronald G. Macala* and *Randall Vehar,* for appellant Lorain Education Assn.

DOUGLAS, J. There are two questions presented by this appeal. One involves the scope of appellate review and the other, a more fundamental merit issue, concerns the question of "mandatory" collective bargaining under the Ohio Public Employees' Collective Bargaining Act ("Act"). Notwithstanding that this case could easily be disposed of on the basis of the standard for appellate review of decisions of the administrative agency SERB, because it is a matter of first impression for this court under the Act, the very substantial merit issue will also be determined. On either count, we find the judgment of the court of appeals to be in error and, therefore, reverse that judgment.

I

R.C. 4117.13(D) provides that in an appeal to the court of common pleas of a final order of SERB involving an unfair labor practice, "* * * [t]he findings of the board as to the facts, if supported by substantial evidence on the record as a whole, are conclusive."

Further, R.C. 4117.08(C) states, in part, that an "* * * employer is not required to bargain on subjects reserved to the management and direction of the governmental unit except as affect wages, hours, terms and conditions of employment * * *." Thus, the question is: Was there substantial evidence to support SERB's finding that appellee's unilateral changes "affect[ed]" the nurses' conditions of employment and, therefore, provisions of the collective bargaining agreement?

The SERB hearing officer made twenty-six separate findings of fact. Finding number fifteen stated that "* * * [n]urses acquired the new responsibility for assisting the health aides by answering their questions and providing them guidance when requested." Finding number twenty-five provided that "[a]s far as students [*sic*] health and nursing requirements, the health aides perform the same responsibilities as school nurses previously performed and in most instances presently perform." The hearing officer recommended that "* * * the act of removing bargaining unit work from unit employees and transferring such to non-unit employees with the resultant affect [*sic*] of a change in the bargaining unit employees' 'conditions' of employment" should be found to be subjects for mandatory collective bargaining.

SERB approved the findings of its hearing officer. Further, SERB found that "* * * by custom and practice the regular unit work was performed by nurses only and thus is encompassed in the collective bargaining agreement. Pursuant to [R.C.] 4117.08(A), any modification of a collective bargaining agreement becomes a mandatory subject of bargaining." While appellee continued to have the same work performed by employees of appellee, that work was being performed by non-

bargaining unit employees who had fewer qualifications than the nurses and were being paid less in wages and fringe benefits.

The common pleas court, in affirming the order of SERB, reviewed the record and concluded that "* * * SERB's findings were supported by substantial evidence. * * *" In utilizing this standard of review, the trial judge complied with the dictates of R.C. 4117.13(D). Pursuant to that statute, the standard of review of a SERB decision on an unfair labor practice charge is whether there is substantial evidence to support that decision.

Further, a determination of whether a public employer's unilateral action "affect[s] wages, hours, terms and conditions of employment" within the meaning of R.C. 4117.08(C) is generally a factual question which will vary depending upon the employer, employees and the circumstances of the case. Such disputes are properly determined by SERB, which was designated by the General Assembly to facilitate an amicable, comprehensive, effective labor-management relationship between public employees and employers. *State, ex rel. Dayton Fraternal Order of Police Lodge No. 44,* v. *State Emp. Relations Bd.* (1986), 22 Ohio St. 3d 1, 5, 22 OBR 1, 4, 488 N.E. 2d 181, 184-185. As long as SERB's decision on such matters is supported by substantial evidence, it must be affirmed. Courts should not be required to intervene in every factual dispute between contesting parties.

Pursuant to R.C. Chapter 4117, unfair labor practice charges are first aired before SERB, one of its members, or a hearing officer. R.C. 4117.12(B)(1). The board member or hearing officer makes findings of fact and conclusions of law and then formulates a recommendation to SERB. R.C. 4117.12(B)(2). SERB then reviews the

matter and issues its decision and order. R.C. 4117.12(B)(3). If SERB finds that an unfair labor practice has occurred (and it must be remembered that such charges may be brought by *either* employees *or* employer—R.C. 4117.11[A] and [B]), then SERB may use its considerable expertise in labor-management relations to resolve the matter. Upon the issuance of a final order, any aggrieved party may pursue an appeal to the court of common pleas. R.C. 4117.13(D). In reviewing the order, courts must accord due deference to SERB's interpretation of R.C. Chapter 4117. Otherwise, there would be no purpose in creating a specialized administrative agency, such as SERB, to make determinations. The General Assembly could have provided for a direct appeal of a hearing officer's decision to a court of common pleas, but such a course would have obviated the purpose for which SERB was established. To allow courts such latitude would invite many conflicting interpretations of R.C. 4117.08 and other provisions in the Act by various courts throughout Ohio.

It was clearly the intention of the General Assembly to vest SERB with broad authority to administer and enforce R.C. Chapter 4117. See, *e.g.,* R.C. 4117.02, 4117.06, 4117.07, 4117.12, 4117.14, 4117.16 and 4117.19. This authority must necessarily include the power to interpret the Act to achieve its purposes. Accordingly, due deference must be afforded SERB's determination that the reassignment of bargaining unit work to persons not members of the bargaining unit is a mandatory subject of collective bargaining under R.C. 4117.08. The trial court herein properly accorded the administrative agency such deference.

In reviewing an order of an administrative agency, an appellate

court's role is more limited than that of a trial court reviewing the same order. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only if the trial court has abused its discretion. An abuse of discretion " '* * * implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.' " *State, ex rel. Commercial Lovelace Motor Freight, Inc.,* v. *Lancaster* (1986), 22 Ohio St. 3d 191, 193, 22 OBR 275, 277, 489 N.E. 2d 288, 290. Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment. See *Rohde* v. *Farmer* (1970), 23 Ohio St. 2d 82, 52 O.O. 2d 376, 262 N.E. 2d 685.

The fact that the court of appeals, or this court, might have arrived at a different conclusion than did the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so.

Herein, there is no showing that the trial court abused its discretion. Accordingly, it was error for the court of appeals to reverse the judgment of the trial court.

## II

The second, and more important, issue in this case is the scope of the bargaining obligation under R.C. 4117.08. The question presented is whether appellee must bargain, pursuant to R.C. 4117.08(A) and (C), regarding its decision to reassign work previously performed by bargaining unit nurses to non-bargaining unit health aides.

In enacting R.C. Chapter 4117, the General Assembly intended to bring about a balance in public sector employment relations. *Dayton Fraternal*

*Order of Police, supra,* at 5, 22 OBR at 4, 488 N.E. 2d at 185. On the one hand, it is provided in R.C. 4117.08(A) that "[a]ll matters pertaining to wages, hours, or terms *and other conditions of employment * * ** are subject to collective bargaining * * *." (Emphasis added.) Subsections (B) and (C) of R.C. 4117.08 set forth extensive "management rights" reserved to the public employer. While these rights are broad, important and deserving of protection against unwarranted intrusion, they are, nevertheless, not unlimited.

Following the recitation of these rights in R.C. 4117.08(C) is additional language: "The employer is not required to bargain on subjects reserved to the management and direction of the governmental unit *except as affect wages, hours, terms and conditions of employment * * *.*" Accordingly, if a public employer intends to implement a decision which "affects" wages, hours, terms and conditions of employment of a bargaining unit, then the employer must bargain on the issue. This is so even if the question is reserved for managerial discretion.

In *State Emp. Relations Bd.* v. *Bedford Hts.* (1987), 41 Ohio App. 3d 21, 534 N.E. 2d 115, the city of Bedford Heights changed the work schedule for its fire fighters without bargaining with the union. SERB ordered the city to bargain with regard to the new schedule. SERB's order was upheld by the court of appeals, which cited R.C. 4117.08(C) and held:

"Pursuant to this * * * [section], and contrary to the city's contention, the city is required to bargain on the subject of scheduling, even though scheduling is a subject which has been reserved for managerial discretion, if the scheduling affects hours of employment. Changing the work schedule of fire fighters from twenty-four hours on and forty-eight hours off to ten-hour

day and fourteen-hour night shifts certainly affects the hours of employment and therefore requires negotiation. * * *" *Id.* at 24, 534 N.E. 2d at 118.

Some confusion arises based upon the use by the General Assembly of the word "affect." The comparable federal statute to R.C. 4117.08(C) is Section 158(d), Title 29, U.S. Code. That section mandates collective bargaining with respect to wages, hours and other terms and conditions of employment. The "effects" of changes in any of these subjects must be bargained.

In choosing the word "affect," as opposed to the word "effect," the legislature has given us a verb rather than a noun as would be the case with the word "effect."

The word "affect" in R.C. 4117.08 (C) suggests that management rights which "act upon" or "produce a material influence upon" working conditions are bargainable. See Webster's Third New International Dictionary (1986) 35. Thus, a reasonable interpretation of R.C. 4117.08(C) is that where the exercise of a management right causes a change in or "affects" working conditions or terms of a contract, then the decision to exercise that right is a mandatory subject for bargaining.

Further, SERB's holding concerning mandatory subjects of bargaining is consistent with the trend that has developed in the public sector in sister states involving reassignment of work or contracting out of bargaining unit work to persons outside the bargaining unit. See, *e.g., Eugene Edn. Assn.* v. *Eugene School Dist. No. 4J* (Ore. Emp. Rel. Bd., Apr. 25, 1977), Pub. Employee Bargaining (CCH), Paragraph 40,359; *Matter of City of Bridgeport and Bridgeport Police Employees Local No. 1159* (Conn. State Bd. of Labor Rel., July 7, 1978), Pub. Employee Bargaining (CCH), Paragraph 40,954; *Pennsylvania Labor Relations Bd.* v. *School Dist. of Millcreek Twp.* (Penn. Labor Rel. Bd., Aug. 23, 1978), Pub. Employee Bargaining (CCH), Paragraph 41,006; *Pennsylvania Labor Relations Bd.* v. *Phoenixville Area School Dist.* (Penn. Labor Rel. Bd., Oct. 27, 1978), Pub. Employee Bargaining (CCH), Paragraph 40,643; *Matter of East Windsor Regional Bd. of Edn. & Highstown Edn. Assn.* (N.J. Pub. Emp. Rel. Comm., Aug. 29, 1979), Pub. Employee Bargaining (CCH), Paragraph 41,422.

A case that closely parallels the facts now before us is *Matter of Piscataway Bd. of Edn. & Piscataway Twp. Edn. Assn.* (N.J. Pub. Emp. Rel. Comm., June 30, 1978), Pub. Employee Bargaining (CCH), Paragraph 40,677. In *Piscataway,* work previously assigned to two bargaining unit school nurses was unilaterally reassigned to two non-bargaining unit health aides. The employer refused to bargain concerning the reassignment. As did SERB in the case before us, the New Jersey Public Employment Relations Commission found that the decision to reassign the work, as well as the impact on the bargaining unit nurses, was a mandatory subject of bargaining.

Thus, a review of the letter and intent of R.C. 4117.08, as well as the case law, demonstrates that SERB correctly concluded that the reassignment of bargaining unit work to non-bargaining unit persons is a mandatory subject of bargaining. The elimination of bargaining unit work comes within the meaning of "terms and conditions of employment."

Therefore, we hold that a public employer must bargain with its employees regarding a management decision to the extent that such decision "affects wages, hours, terms and conditions of employment." Thus, the reassignment of work previously per-

formed by members of a bargaining unit to persons outside the unit is a mandatory subject for collective bargaining under R.C. 4117.08(A) and (C). Contrary to appellee's admonitions, this does not mean that management rights would be abrogated. Requiring appellee to bargain does not require that an agreement be reached. It does, however, provide a process whereby employees will be consulted about decisions which have a profound impact on them and, thus, industrial peace will be preserved and promoted.

The judgment of the court of appeals is reversed. The judgment of the trial court is reinstated and the cause is remanded to that court with instructions to enforce SERB's final order.

*Judgment reversed and cause remanded.*

SWEENEY, LOCHER and H. BROWN, JJ., concur.

MOYER, C.J., HOLMES and WRIGHT, JJ., dissent.

MOYER, C.J., dissenting. Because I agree with the well-reasoned dissent of then-chairman Day to SERB's majority opinion, which was found persuasive by the court of appeals, I respectfully dissent from the majority opinion herein.

The 1983-1986 collective bargaining agreement between the education association and the school board required that at least five full-time equivalent educational service personnel per one thousand students be maintained by the board of education. Among this number may be those employees holding a teaching certificate in the following specialties: (1) school nurse, (2) educational media specialist/librarian, (3) school counselor, (4) visiting teacher, (5) art, (6) music, and (7) physical education. No specific provision was negotiated for the number of school nurses to be employed. Rather, school nurses were included in the total ratio of educational service personnel.

The plain language of R.C. 4117.08(C)(1), (3), (4), (5), (6) and (8) gives management the authority to determine the adequacy and nature of the work force within the bounds of a bargaining agreement, as well as the prerogative of determining standards of service and organizational structure. The school board's decision to replace school nurses, who voluntarily departed employment, with health aides was within the scope of managerial discretion in determining how best to accomplish the health care needs of the population served by the school district.

The majority's reliance on *State Emp. Relations Bd.* v. *Bedford Hts.* (1987), 41 Ohio App. 3d 21, 534 N.E. 2d 115, and *Matter of Piscataway Bd. of Edn. & Piscataway Twp. Edn. Assn.* (N.J. Pub. Emp. Rel. Comm., June 30, 1978), Public Employee Bargaining (CCH), Paragraph 40,677, is therefore misplaced as the facts are clearly distinguishable. In the *Bedford Heights* case, the city unilaterally changed the hours worked by fire fighters. This was a direct violation of R.C. 4117.08(A) which imposes a duty to bargain before making changes to wages, hours, and terms or conditions of employment. In *Piscataway, supra,* another unilateral decision was made in violation of the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-5.4, when the board of education decided not to replace two nurses who were on leave—thus effectively terminating two bargaining unit employees.

A close reading of R.C. 4117.08(C) and the bargaining agreement executed by the board of education and the education association leads to the

conclusion that they are consistent. The bargaining agreement recognizes the authority given the board pursuant to R.C. 4117.08(C)(4) in particular, which permits management to "[d]etermine the overall methods, process, means, or personnel by which governmental operations are to be conducted." As Chairman Day observed, the action taken by the school board was well within the limits of the statute. However, the statutory provisions do not give to the board an unlimited right to engage in unilateral action. The apparent conflict between the last full paragraph of R.C. 4117.08(C) and the other paragraphs of the statute is resolved by requiring management to bargain on the effects of its actions if such actions affect wages, hours, terms and conditions of employment.

The case before us presents an excellent example for such a logical application of the statute. The board of education has the authority to determine the specific personnel that should be employed to meet its contractual obligation to provide five full-time equivalent educational service personnel per one thousand students. The education association has expressly agreed that such personnel may be a school nurse, an educational media specialist/librarian, a school counselor, a visiting teacher, or a person with art, music, or physical education certification.

The agreement required a certain ratio of educational service personnel, but left to the discretion of the employer how best to serve the public by employing any number of these specialties included in the agreement, with no one specialty designated preferentially. Since the board maintained more than the required number of educational service personnel per thousand, the board was not required to replace any of the retiring nurses. It is only after management decisions have been made with regard to these personnel that the school district must negotiate with the education association on the effect of such changes on the collective bargaining unit as a whole.

Appellants argue that the hiring of non-nurses has affected the terms and conditions of the employment of the nurses who remain. That issue is bargainable and the board should be ordered to bargain on those matters. Such an application of the statute gives effect to the plain meaning of the words used therein, preserves the rights of management to determine the means or personnel by which its obligations under the collective bargaining agreement are to be achieved, and protects the bargaining rights of the bargaining unit members.

The effect of the majority opinion is to require that every time a public employer intends to perform any of its responsibilities pursuant to R.C. 4117.08(C)(1), (3), (4), (5), (6) and (8), it must first bargain with the representative of the bargaining units even though neither the statute nor the bargaining agreement imposes such a constraint.

I would affirm the judgment of the court of appeals.

HOLMES and WRIGHT, JJ., concur in the foregoing dissenting opinion.