**In re INTERIORS SPECIALISTS, INC.**

[Cite as *In re Interiors Specialists, Inc.* (1991), 75 Ohio App.3d 1.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–136.

Decided July 11, 1991.

*Robinson, Curphey & O'Connell* and *Ronald S. Moening,* for appellant Interior Specialists, Inc.

*Lee Fisher,* Attorney General, and *William Damsel,* Assistant Attorney General, for appellee Department of Administrative Services.

STRAUSBAUGH, Judge.

Appellant, Interior Specialists, Inc., appeals from the judgment of the Franklin County Court of Common Pleas affirming the decision of the Equal Employment Opportunity Coordinator ("EEO coordinator") to decertify appellant as a minority business enterprise ("MBE").

Appellant is an Ohio corporation engaged in the drywall construction business. Fifty-one percent of the corporate stock is in the name of Ophus Dorn, a minority, while forty-nine percent of the stock is in the name of Bernard Paskiet, a nonminority. Dorn serves as president and treasurer for appellant and Paskiet is the secretary. Dorn's wife, a minority, serves as vice president for appellant.

In 1985, appellant was certified as an MBE pursuant to R.C. 123.151. By letter dated March 11, 1988, the EEO coordinator informed appellant that a recertification affidavit must be completed and returned to the coordinator for review. By letter dated April 18, 1989, the EEO coordinator gave appellant notice of intention to deny appellant's application for MBE recertification for the following reasons:

"The basic operations of the day-to-day business of the applicant concern are controlled by non-minority persons (Bernard Paskiett [*sic*], Brenda Gillespie and David Smith). In violation of O.A.C. 123:2–15–01(A)(3)(B), these individuals have affiliations and ownership of Ohio Ceiling and Partition Company which is in the same and/or similiar [*sic*] type of business as the Minority Business Enterprise * * *.

"The non-minority persons control over the applicant concern directly or indirectly restrict the economic growth of the company * * *.

"Non-minority persons (David Smith, Estimator and Brenda Gillespie, Secretary/Bookkeeper) exercise actual ultimate control over major aspects of the applicant concerns day-to-day operations, finances, and management decision. * * *

"The relative compensation received by the minority and non-minority participants in the corporation indicate that the non-minority participants have a greater than 49% interest in the corporation.   * * * "

Appellant subsequently requested a hearing before the Director of the Department of Administrative Services ("DAS").   On June 13, 1989, the matter was heard before a hearing examiner.   On April 12, 1990, the hearing examiner issued a report which recommended denial of MBE recertification for appellant.   On June 11, 1990, an adjudication order was issued by the Director of DAS, adopting the recommendation of the hearing examiner and denying appellant's application for recertification.

Pursuant to R.C. 119.12, appellant filed a timely notice of appeal with the trial court.   By decision dated January 10, 1991, the trial court affirmed the order of the DAS, holding in relevant part:

" * * * The record before the Court provides clear evidence that the appellants do not have such 'control over management and day-to-day operations of the business' as contemplated by R.C. 122.71(E)(2).   Further, the hearing examiner's findings of fact and the Court's own examination of the entire record show numerous bases for the inference that the appellant is little more than a dummy corporation created to provide an available MBE to the principal corporation Ohio Ceiling."

Appellant sets forth the following three assignments of error for review:

"1.   The lower court erred in not certifying appellant as a minority business enterprise because O.R.C. § 123.151 mandates certification to a company which meets the statutory requirements.

"2.   The coordinator applied an inappropriate standard which required a minority to have 'complete' control of the business; the correct standard is 'ultimate' control commensurate with stock ownership.

"3.   The coordinator erred in finding that Mr. Dorn's consultations with certain individuals evidenced lack of control."

Appellant's assignments of error are interrelated and will be addressed together.

R.C. 119.12 sets forth the standard of review to be applied by the trial court in deciding an administrative appeal.   That statute provides that the court may affirm the order of the agency if it finds, based upon consideration of the entire record and such additional evidence admitted by the court, " * * * that the order is supported by reliable, probative, and substantial evidence and is in accordance with law."

However, in reviewing the order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the

same order. *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260–261, 533 N.E.2d 264, 266–267. In *Lorain City*, the Supreme Court of Ohio noted:

" * * * It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only if the trial court has abused its discretion. An abuse of discretion ' " * * * implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency." ' * * * Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment. * * *

"The fact that the court of appeals * * * might have arrived at a different conclusion than did the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." *Id.* at 261, 533 N.E.2d at 267.

■ R.C. 123.151 provides that the EEO coordinator " * * * shall approve the application of any minority business enterprise that complies with the rules adopted under this division." R.C. 122.71 sets forth the definition of an MBE and states in relevant part:

"(E)(1) 'Minority business enterprise' means an individual, partnership, corporation, or joint venture of any kind that is owned and controlled by United States citizens, residents of Ohio, who are members of one of the following economically disadvantaged groups: Blacks, American Indians, Hispanics, and Orientals.

"(2) 'Owned and controlled' means that at least fifty-one per cent of the business, including corporate stock if a corporation, is owned by persons who belong to one or more of the groups set forth in division (E)(1) of this section, and that such owners have control over the management and day-to-day operations of the business and an interest in the capital, assets, and profits and losses of the business proportionate to their percentage of ownership. * * *"

Ohio Adm.Code 123:2–15–01(A)(3) provides that minority persons must have actual control of the day-to-day operations of the MBE. That rule lists the following factors to be considered by the EEO coordinator in evaluating the nonminority influence:

"(a) Has the non-minority person(s) employed the owner of the applicant concern for any period of time during the three years prior to the date of application by the applicant for minority business enterprise status;

"(b) Is the non-minority person(s) affiliated with another business in the same or similar type of business as the applicant concern;

"(c) Does the non-minority person(s) exercise final authority over any aspect of the day-to-day operations of the applicant concern;

"(d) Does the non-minority person(s) control over the applicant concern directly or indirectly restrict the economic growth of the company;

"(e) The relative compensation received by the non-minority person(s) as compensation for services as a consultant, director, officer or employee rendered to the applicant concern."

In the present case the hearing examiner for DAS concluded, based upon the evidence presented at hearing, that appellant did not qualify as a minority owned and controlled business as defined under R.C. 122.71 and as provided under the guidelines set forth in Ohio Adm.Code 123:2–15–01(A)(3). The primary concern expressed by the hearing examiner in recommending denial of recertification was the close relationship between appellant and Ohio Ceiling and Partition Company ("Ohio Ceiling"), a corporation also engaged in the plastering and drywall business.

Ohio Ceiling is owned by Paskiet who, as noted above, is the forty-nine percent nonminority owner of appellant. The hearing examiner noted that appellant is housed at the business offices of Ohio Ceiling and has no independent telephone line or signs at the Ohio Ceiling location to indicate that it is a separate business apart from Ohio Ceiling. The hearing examiner also found that nearly all of the equipment used by appellant is borrowed from Ohio Ceiling and that appellant does not seek out the best prices for the materials it purchases from Ohio Ceiling. Further, appellant uses employees who are on the payroll at Ohio Ceiling and whose payroll deductions are continued through Ohio Ceiling although they are working for appellant.

The hearing examiner found that various monies had been transferred between appellant and Ohio Ceiling without any substantiation through pay vouchers or other means as to the reasons for the transfers. The hearing examiner noted that in 1986 and 1987 more than eighty percent of appellant's income was derived from its work as the subcontractor on projects where Ohio Ceiling was the prime contractor. In 1988, appellant had two contracts, one of which was with Ohio Ceiling while the other was as a subcontractor on a job which Ohio Ceiling had bid but was not awarded the contract.

The hearing examiner noted that Dorn, who has worked for Ohio Ceiling since 1968, is employed as a plasterer for Ohio Ceiling whenever he is not working for appellant. The hearing examiner concluded that the evidence did not demonstrate that Dorn has control over the day-to-day operations of the

business. The hearing examiner cited the fact that during the on-site investigation of appellant's business, Dorn had to rely upon appellant's bookkeeper to answer certain questions concerning appellant's business matters. Appellant's bookkeeper, who works part-time for appellant, is the full-time bookkeeper for Ohio Ceiling. In assessing Dorn's knowledge of financial matters, the hearing examiner noted that during the hearing Dorn was unable to provide any information regarding a major disbursement of $27,734.96 paid from appellant to Ohio Ceiling.

Based upon the evidence presented, the hearing examiner found the existence of an influential relationship between Ohio Ceiling and its owners and managers with appellant which was contrary to the statutory requirement that for MBE certification the company must be a minority-controlled business. In affirming the order of DAS, the trial court held that the record " * * * clearly establishes that the decision by the DAS to deny appellant's for MBE certification was supported by reliable, probative, and substantial evidence." Based upon a review of the record in this matter, we find no abuse of discretion by the trial court in its determination.

Appellant asserts that the EEO coordinator applied an inappropriate standard which would require Dorn to have "complete" control of the day-to-day operations of the business. Appellant relies upon the testimony of Adrian Maldonado, an investigator for the EEO coordinator, in support of this contention. We are unpersuaded.

Gilbert Price, the EEO coordinator, testified that under the rules for certification the minority member " * * * must have actual control of the day to day operations of the business enterprise * * *." Further, James Burton, the MBE supervisor, testified concerning the issue of control under the statute and rules. On cross-examination, Burton was asked whether he felt that the minority must have one hundred percent control of the company. Burton stated that the rules do not require such control by the minority member. Even assuming that EEO investigator Maldonado testified as to an improper standard, the record does not indicate that the EEO coordinator applied an inappropriate standard in denying appellant's application for recertification.

Based upon the foregoing, appellant's assignments of error are not well-taken and are overruled. The judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

BOWMAN, P.J., and HOOPER, J., concur.

JAMES J. HOOPER, J., retired, of the Miami County Court of Common Pleas, sitting by assignment.