OAK HILLS EDUCATION ASSOCIATION et al., Appellants,

v.

OAK HILLS LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, Appellee.

[Cite as *Oak Hills Edn. Assn. v. Oak Hills Local School Dist. Bd. of Edn.*, 158 Ohio App.3d 662, 2004-Ohio-6843.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–040169 and C–040172.

Decided Dec. 17, 2004.

---

13. *State v. Saphire* (Dec. 8, 2000), 2d Dist. No. 2000 CA 39.

664

Cloppert, Latanick, Sauter & Washburn and Susan Hayest Kozlowski, for appellant Oak Hills Education Association.

Jim Petro, Attorney General, and Michael D. Allen, Principal Assistant Attorney General, for appellant State Employment Relations Board.

Ennis, Roberts & Fischer, William Deters II, and J. Michael Fischer, for appellee.

Downes, Hurst & Fishel, and Jonathan J. Downes, for amicus curiae Buckeye State Sheriff's Association.

Douglas E. Duckett, for amicus curiae Ohio Public Employer Labor Relations Association.

MARK P. PAINTER, Judge.

{¶ 1} The procedural history of this case is somewhat complicated; the result is not. The trial court applied the wrong standard of review, and we reverse.

{¶ 2} Plaintiffs-appellants the State Employment Relations Board ("SERB") and the Oak Hills Education Association ("the union") appeal the trial court's determination that the Oak Hills Local School District Board of Education had not committed an unfair labor practice. SERB had previously found that the board of education had committed an unfair labor practice, and the trial court should have afforded the SERB decision due deference.

## *I. The CBA, Midterm Bargaining, and Tuition Reimbursement*

{¶ 3} The union and the board of education negotiated and signed a collective-bargaining agreement ("CBA") effective from July 2001 through July 2004. We imagine that the CBA covered the standard topics normally included in such agreements—negotiation procedures, grievance procedures, working conditions, compensation, and other key employment issues. But imagine is all that we can do; none of the parties bothered to file a copy of the CBA with the trial court.

{¶ 4} The board of education has included a copy of the CBA in its appellate brief. But we are bound by the record below and may not consider new evidence.[1] The CBA was apparently on file with SERB, but the trial court did not (nor do we) have access to it, at least for purposes of review. We may therefore consider only those portions of the CBA that the parties stipulated to, or that were referred to in memoranda and not objected to.

{¶ 5} After the CBA became effective, the board of education sent the union a notice to negotiate, asking that it bargain about the effects of a proposed partial tuition-reimbursement plan. Parties send notices to negotiate when they want to make changes to a CBA. Depending on the terms of the CBA, the parties must then bargain over the effects of the proposed changes. But if there is another portion of the CBA that states that the parties need not bargain over those specific changes, then the CBA remains intact and neither party can unilaterally change it.

{¶ 6} The tuition-reimbursement plan here offered to reimburse teachers up to $1,200 for 12 credits of study toward a master's degree at Xavier University. The parties agree that the CBA did not contain any provisions that specifically concerned tuition-reimbursement programs.

{¶ 7} The union did not want that benefit conferred. It did not express its reasons for this, and it seems counterintuitive. Perhaps it felt that the plan was

---

1. See *Paulin v. Midland Mut. Life Ins. Co.* (1974), 37 Ohio St.2d 109, 66 O.O.2d 231, 307 N.E.2d 908.

too restrictive, being limited to one university only, and believed that it could negotiate a better plan during the next regular negotiation period. In any event, the union had the right not to accept the "benefit." The union argued that it did not have to bargain over the plan and filed with SERB a motion to dismiss or, in the alternative, to stay the notice to negotiate.

{¶ 8} The board of education responded by unilaterally approving and enacting the tuition-reimbursement plan. The union then brought unfair-labor-practice charges before SERB. After reviewing the dispute, SERB issued a final order in favor of the union, finding that the board of education had committed an unfair labor practice.

{¶ 9} The board of education appealed to the Hamilton County Court of Common Pleas.[2] The trial court then referred the case to the magistrate, who found that SERB's decision was correct. But the trial court did not accept the magistrate's decision and instead found that the CBA contained a midterm bargaining clause that required the parties to negotiate new terms such as the tuition-reimbursement plan. Interestingly, none of the parties ever argued that the CBA contained a midterm bargaining provision. And apparently it did not.

{¶ 10} But the trial court still concluded that the union had shirked its duty to negotiate with the board of education and that the board of education therefore had not engaged in an unfair labor practice by unilaterally implementing the tuition-reimbursement plan.

{¶ 11} SERB and the union now assign the same error—namely, that the trial court should not have reversed SERB's order. We agree and reverse.

## II. Our Review

{¶ 12} Ohio law is clear: if an order from SERB is supported by substantial evidence on the record, the common pleas court must uphold SERB's decision.[3] The United State Supreme Court has defined "substantial evidence" as such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, but less than the weight of the evidence.[4] "Substantial evidence" is a low burden.

---

**2.** See R.C. 4117.13.

**3.** See *Univ. Hosp. v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835; *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 533 N.E.2d 264; R.C. 4117.13(D).

**4.** *Consol. Edison Co. v. Natl. Labor Relations Bd.* (1938), 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126; *In re State Emp. Relations Bd. v. Pickaway Cty. Dept. of Human Serv.* (1995), 108 Ohio App.3d 322, 670 N.E.2d 1010.

{¶ 13} And whether a SERB order can withstand review is essentially a question of law for the common pleas court to decide.[5] When reviewing a SERB order the common pleas court must give extreme deference to SERB's resolution of evidentiary conflicts.[6]

{¶ 14} The trial court's conclusion that a SERB order is not supported by substantial evidence is a legal determination, and it is fully reviewable by an appellate court.[7]

{¶ 15} SERB held in this case that the board of education had failed to bargain and therefore had committed an unfair labor practice.[8] Additionally, SERB found that the CBA contained no midterm dispute-resolution provision.

{¶ 16} But the trial court disagreed. It found that SERB had incorrectly applied the law. The trial court relied upon section 1.0101 of the CBA: "All matter pertaining to wages, hours, or terms and other conditions of employment and the continuation, modification or deletion of an existing provision of this Agreement are subject to collective bargaining." The trial court found that this provision created a midterm dispute-resolution procedure. But it did not.

{¶ 17} The trial court applied *State Emp. Relations Bd. v. Youngstown City School Bd. of Edn.*[9] Based on its analysis of *Youngstown,* the trial court held that the union had waived its right to bargain and therefore that the board of education had acted properly in approving the reimbursement plan. But *Youngstown* dealt with the requirements for midterm bargaining over subjects not covered in the parties' agreements. Here, the tuition-reimbursement plan was not covered in the CBA. But it would have affected wages or terms and conditions of employment that were already a part of the CBA. More important, there was no midterm bargaining provision here. *Youngstown* therefore did not apply.

{¶ 18} For all we know, the union and the board of education could theoretically have bargained about a similar plan before settling on the CBA at hand. Allowing the board of education to unilaterally implement something that it could have bargained about earlier would be illogical and unfair to the union.

---

5. *Univ. Hosp. v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835.

6. Id.; *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 17 O.O.3d 65, 407 N.E.2d 1265.

7. *Univ. Hosp. v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835.

8. R.C. 4117.11(A)(5)

9. *State Emp. Relations Bd. v. Youngstown City School Dist. Bd. of Edn.* (June 30, 1995), SERB No. 95–010.

Once a CBA has been reached, the written terms of that agreement are preserved, and neither management nor labor may unilaterally modify a management right without the consent of the other party.[10]

{¶ 19} Rather than *Youngstown*, *In re Toledo City School Bd. of Edn.* should have been the controlling precedent.[11] *Toledo* explained public employers' obligations to bargain during the term of an agreement. Where the parties have not adopted midterm bargaining procedures, and where a party unilaterally modifies a provision in an existing CBA after bargaining the subject to ultimate impasse, SERB must determine whether an unfair labor practice has occurred.[12]

{¶ 20} "A party cannot modify an existing [CBA] without the negotiation and by agreement of both parties unless immediate action is required due to (1) exigent circumstances that were unseen at the time of negotiations or (2) legislative action taken by a higher-level legislative body after the agreement became effective that requires a change to conform to the statute."[13] It is that simple.

{¶ 21} The parties agreed that no exigent circumstances had arisen. And the parties agreed that there had been no legislative action. So the only way that a modification could arise would have been by collective bargaining. But the union was not required to bargain.

{¶ 22} The Ohio Supreme Court has held that if a public employer intends to implement a decision that "affects wages, hours, [or] terms and conditions of employment," then the employer must bargain on the issue.[14] This is true "even if the question is reserved for managerial discretion."[15] In other words, neither party can unilaterally change a CBA if it affects any of those matters and if there is no midterm bargaining provision.

{¶ 23} The tuition-reimbursement program pertained to wages or terms and conditions of employment, and it was therefore subject to collective bargaining. The board of education had no right to unilaterally change the CBA here. And

---

10. See *UAW, Local 457 v. Natl. Labor Relations Bd.* (C.A.D.C.1985), 765 F.2d 175; *Teamsters Cannery Local 670 v. Natl. Labor Relations Bd.* (C.A.9, 1988), 856 F.2d 1250.

11. (Oct. 1, 2001), SERB No. 2001–005.

12. Id.

13. Id.

14. *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 533 N.E.2d 264; see, also, R.C. 4117.08.

15. Id.

the union had no duty to bargain for the requested changes while the CBA was still in effect.

{¶ 24} Under R.C. Chapter 4117, the union would have been required to bargain over the effects of the proposed tuition-reimbursement plan if it was negotiating for a successor CBA with the board of education. But the statutory dispute-resolution procedure did not apply to midterm disputes.[16] And in the absence of a settlement procedure, SERB must deal with each incident on a case-by-case basis.[17] In this particular case, SERB found that there was no midterm-dispute provision and that the board of education should not have acted unilaterally in imposing the tuition-reimbursement plan.

{¶ 25} The possibility that two inconsistent conclusions can result from the same evidence does not prevent an administrative agency's findings from being held determinative on the basis of substantial evidence.[18] Therefore SERB's finding that no midterm provision existed was conclusive despite the trial court's finding to the contrary. And we agree that SERB correctly interpreted the contract.

{¶ 26} Amici curiae the Ohio School Board Association and the Buckeye State Sheriffs' Association have submitted briefs on behalf of the board of education. But their arguments fail for the same reasons that the board of education's arguments fail—namely, they ignore the fact that the CBA in this case did not contain a midterm bargaining provision. The sheriffs' association also argues that the General Assembly, in enacting the Collective Bargaining Act, evidenced an intent to permit public employers to effectively manage their agencies. But we fail to see how this helps the board of education; as we have already stated, it clearly would not be effective to allow the board of education to unilaterally implement a new provision every time it wanted to.

{¶ 27} The undisputed facts of this case amounted to substantial evidence in support of SERB's order: the tuition-reimbursement plan related to wages or terms and conditions of employment, and it was therefore subject to collective bargaining. And no midterm bargaining provision existed. The trial court therefore did not afford due deference to SERB's determination.

---

**16.** *In re Franklin Cty. Sheriff* (July 18, 1990), SERB No. 90–012.

**17.** Id.

**18.** *Consolo v. Fed. Maritime Comm.* (1966), 383 U.S. 607, 619–620, 86 S.Ct. 1018, 16 L.Ed.2d 131.

{¶ 28} We therefore sustain SERB's and the union's sole assignment of error, and enter final judgment in their favor by reinstating SERB's order.

Judgment accordingly.

HILDEBRANDT, P.J., and GORMAN, J., concur.