**STATE EMPLOYMENT RELATIONS BOARD et al., Appellants,**

v.

**QUEEN CITY LODGE NO. 69, FRATERNAL ORDER OF POLICE, Appellee.**

[Cite as *State Emp. Relations Bd. v. Queen City Lodge No. 69, Fraternal Order of Police*, 174 Ohio App.3d 570, 2007-Ohio-5741.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–060782.

Decided Oct. 26, 2007.

Jim Petro, Attorney General, and Michael D. Allen, Principal Assistant Attorney General, for appellant State Employment Relations Board.

Julia L. McNeil, City Solicitor, and Richard Ganulin, Assistant City Solicitor, for appellant city of Cincinnati.

Hardin, Lefton, Lazarus & Marks, L.L.C., and Stephen S. Lazarus, for appellee.

MARK P. PAINTER, Presiding Judge.

{¶ 1} Can a labor agreement continue to override a vote of the people amending the Cincinnati City Charter? The trial court said that it could—forever. But we hold that the charter must prevail.

{¶ 2} Plaintiff-appellant, the State Employment Relations Board ("SERB"), and intervenor-appellant, the city of Cincinnati, appeal the trial court's determination that the city had committed an unfair labor practice by failing to bargain in good faith with defendant-appellee, Queen City Lodge No. 69, Fraternal Order of Police, over terms and conditions of employment affecting assistant police chiefs. SERB had previously ruled that the city had not committed an unfair labor practice, and because that determination was supported by substantial evidence in the record, the trial court should not have substituted its judgment for SERB's.

{¶ 3} Because the trial court applied the wrong standard of review, and was clearly in error, we reverse.

## I.  The Charter Amendment

{¶ 4} The city is a charter municipality with home-rule authority as provided by the Ohio Constitution. The union is the exclusive representative for the bargaining units comprising members of the city's police department. The city and the union were parties to a collective-bargaining agreement ("CBA") governing the police supervisors' unit from December 10, 2000, through December 21, 2002.

{¶ 5} Almost one year after the CBA went into effect, Cincinnati's city council passed an emergency ordinance placing on the upcoming ballot an amendment to the city's charter that proposed to reclassify certain high-level city employees, including assistant police chiefs, from the classified service to the unclassified service. But current assistant police chiefs would remain classified employees until they vacated their position. On November 6, 2001, a majority of the Cincinnati electorate voted in favor of the charter amendment. Thus, the city charter was amended to read as follows:

{¶ 6} "The positions of police chief and assistant police chief shall be in the unclassified civil service of the city and exempt from all competitive examination requirements. The city manager shall appoint the police chief and assistant police chiefs to serve in said unclassified positions. The police chief and assistant police chiefs shall be appointed solely on the basis of their executive and administrative qualifications in the field of law enforcement and need not, at the time of appointment, be residents of the city or state * * *. The incumbent officers in the police chief and assistant police chief positions at the effective date of this Charter provision, shall remain in the classified civil service until their position becomes vacant after which time their positions shall be filled according to the terms of this section."

{¶ 7} The charter amendment did not apply to the police department alone—it also covered dozens of other city positions, removing many from classified civil service.

{¶ 8} Before the charter amendment passed, any promotion to a vacancy in the assistant-police-chief position was made from the civil-service promotional eligibility list under the "Rule of One," which required that the highest-ranked employee automatically be promoted to any vacancy.

{¶ 9} In September 2002, one of the city's assistant police chiefs submitted notice of his intent to retire pending a criminal investigation of his alleged misconduct.  In anticipation of this retirement, one of the city's police captains, Stephen Gregoire, asserted a right to be promoted to the assistant police chief's position in accordance with the Rule of One. Because the charter amendment was now in effect, the city did not follow the Rule of One and refused to appoint Captain Gregoire to the vacancy.  Captain Gregoire filed a contractual grievance, which was ultimately denied through arbitration, once it was determined that no vacancy existed when Gregoire asserted his right to be promoted.

{¶ 10} In October 2002, the union filed an unfair-labor-practice ("ULP") charge against the city with SERB. The ULP charge alleged that the city had failed to bargain in good faith with the union when it unilaterally modified the established promotional process for assistant police chiefs by applying the charter amendment and refusing to fill a vacant assistant-police-chief position under the Rule of One. SERB ordered the parties to mediation, which was unsuccessful.  There was a hearing before a SERB administrative law judge ("ALJ"), who recommended that SERB determine that the city had committed a ULP, that it fill vacancies from the promotional eligibility list, and that the city cease and desist from implementing the charter amendment.  The city filed exceptions, and SERB heard those exceptions in March 2004.  But while SERB's decision was pending, the union filed a second ULP charge against the city when the city refused to fill another vacant assistant-police-chief position.  With respect to that charge, SERB issued a probable-cause finding and directed that the dispute proceed to a hearing.

## II.   The ULP Charge and SERB's Decision

{¶ 11} In September 2005, SERB dismissed the first ULP charge, ruling that the charter amendment did not conflict with the CBA regarding the promotional process and thus that the CBA did not govern the dispute between the parties. But SERB did determine that because it was a past practice to promote based on the Rule of One, the city had a duty to bargain with the union over a modification to the promotional process for assistant police chiefs.  SERB then concluded that this duty to bargain was excused because the charter amendment was enacted by

a "higher-level legislative authority," the voting public of Cincinnati. Finally, SERB determined that the city had "not engaged in trickery or gamesmanship with the union" and thus that the city had not violated R.C. 4117.11(A)(1) and (A)(5) by failing to bargain in good faith with the union. SERB also dismissed the second probable-cause finding based on the dismissal of the first ULP charge.

{¶ 12} The union appealed both of these decisions to the Hamilton County Court of Common Pleas.[1] SERB moved to dismiss the appeal of the second ULP charge for lack of jurisdiction. The trial court denied the motion, consolidated both administrative appeals, and referred the case to a magistrate. The union did not name the city as a party to the appeals to the common pleas court. This was a bit odd. Before briefs were due in the appeals, the city filed a motion to intervene, which was denied.

{¶ 13} The city's not being a party to the case resulted in a procedural nightmare that took some doing to straighten out. We made the city a party to this appeal.

### III. The Trial Court's Turn

{¶ 14} The common pleas magistrate recommended reversing SERB's decision. The magistrate determined that the charter amendment conflicted with the CBA in two respects: it interfered with Article III, Section 1 of the CBA dealing with grievance procedures, and it interfered with Article VII, Section 22, which the magistrate construed as dealing with promotions.

{¶ 15} The magistrate then determined that because of this conflict, the city had a duty to bargain with the union. The magistrate held that the city had not bargained with the union and that the city had committed a ULP by passing the August 2001 ordinance that placed the charter amendment on the ballot. Because the magistrate construed the ULP as passing the ordinance to place the charter amendment on the ballot, and not the act of applying the charter amendment, the magistrate concluded that the charter amendment was not enacted by a "higher-level legislative body," and that SERB's determination to the contrary was unreasonable. Ultimately, the magistrate recommended reversing SERB's decision, finding that it was not supported by substantial evidence, and opined that the city had violated R.C. 4117.11(A)(5). The magistrate also held that the city had improperly denied Captain Gregoire a promotion to assistant police chief. SERB filed objections to the magistrate's decision, which the trial court overruled without comment. All of this was erroneous.

---

1. See R.C. 4117.13.

{¶ 16} Because the trial court simply adopted the magistrate's decision without further elaboration, we refer to the decision prepared by the magistrate as the "trial court's decision."

{¶ 17} On appeal, SERB brings forth two assignments of error. Because we have granted the city's motion to intervene in this appeal under Civ.R.24(A), we consider the city's three assignments of error as well.

{¶ 18} SERB's first assignment of error and the city's first and second assignments of error both maintain that the trial court erred when it reversed SERB's order that the city had not committed a ULP. Because we conclude that the trial court improperly reviewed SERB's decision de novo and did not properly defer to SERB's findings that were supported by substantial evidence in the record, we sustain these assignments of error.

### IV. Standard of Review—Deference Is Required

{¶ 19} In administrative appeals, the appellate court generally reviews the trial court's judgment for an abuse of discretion. But the Ohio Supreme Court has consistently recognized that "SERB's findings are entitled to a presumption of correctness."[2] The court has also explained that "courts must accord due deference to SERB's interpretation of R.C. Chapter 4117. Otherwise, there would be no purpose in creating a specialized administrative agency, such as SERB, to make determinations. * * * It was clearly the intention of the General Assembly to vest SERB with broad authority to administer and enforce R.C. Chapter 4117. This authority must necessarily include the power to interpret the Act to achieve its purposes."[3]

{¶ 20} Thus we, and the trial court, must defer to SERB when SERB's decision is supported by substantial evidence and is not a misapplication of law.

{¶ 21} The Ohio Supreme Court has articulated the standard as follows: "Ohio law is clear: if an order from SERB is supported by substantial evidence on the record, the common pleas court *must* uphold SERB's decision. * * * '[S]ubstantial evidence' [i]s such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, but less than the weight of the evidence. 'Substantial evidence' is a low burden."[4] (Emphasis added.)

2. *Hamilton v. State Emp. Relations Bd.* (1994), 70 Ohio St.3d 210, 214, 638 N.E.2d 522.

3. (Citations omitted.) *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260, 533 N.E.2d 264.

4. *Oak Hills Edn. Assn. v. Oak Hills Local School Dist. Bd. of Edn.*, 158 Ohio App.3d 662, 2004-Ohio-6843, 821 N.E.2d 616, at ¶ 12 (citations omitted).

{¶ 22} A trial court's conclusion that a SERB order is not supported by substantial evidence is a legal determination, and it is fully reviewable by an appellate court.[5]

## V.  Conflicting Provisions?

{¶ 23} The city and SERB both contend that the trial court erred in rejecting SERB's determination that there was no conflict between the charter amendment and the CBA.

{¶ 24} A collective-bargaining agreement under R.C. Chapter 4117 governs the terms and conditions of public employment covered by the agreement.  In considering R.C. 4117.10(A), the Ohio Supreme Court has held that if a local law conflicts with a terms-and-conditions-of-employment provision found in a collective-bargaining agreement, the collective-bargaining agreement prevails over the local law.[6]  Thus, it was necessary for SERB to determine first whether the charter amendment, which allowed for the city manager to appoint future assistant police chiefs, conflicted with any provision in the CBA governing promotions of assistant police chiefs.  If there were conflicting provisions, then the CBA would prevail over the charter amendment, and bargaining would be required.

{¶ 25} SERB reviewed the CBA and concluded that "[it] did not specify the promotional process for assistant police chiefs."  SERB relied on the finding of its ALJ, who noted that although "the filling of vacancies is indeed mentioned in Article VII, Section 22 of the [CBA], entitled 'Terminal Benefits[,]' a careful reading of that provision leads to the conclusion that what is described in the [CBA] is not the promotion process itself, * * * but rather a determination of the date upon which a vacancy is deemed to have occurred when a bargaining-unit member is forced to retire * * *."  Upon review of this article, we agree with SERB's interpretation.

{¶ 26} The trial court indicated that because Article VII, Section 22 mentioned the filling of vacancies, SERB should have considered that before the charter amendment took effect, all officers were promoted by the Rule of One, and should have concluded that this provision governed promotions.

{¶ 27} But the parties stipulated to the fact that past promotions were governed by the Rule of One, and common sense dictates that if there had been a provision in the CBA governing promotions, the parties would not have had to

5.  Id.

6.  R.C. 4117.10(A); *Jurcisin v. Cuyahoga Cty. Bd. of Elections* (1988), 35 Ohio St.3d 137, 519 N.E.2d 347.

stipulate to that fact. Essentially, what the trial court did here was to substitute its judgment for that of SERB. That was improper. Accordingly, the trial court erred by failing to defer to SERB's determination that there was no conflict between the charter amendment and the CBA.

{¶ 28} The trial court also held that the charter amendment conflicted with Article III, Section 1, which governed the grievance procedures for police officers, including assistant police chiefs. But that was not an appropriate basis for the trial court to reverse SERB's decision. First, the charter amendment specifically provided that those currently in the position of assistant police chief would continue to remain classified and have access to the grievance procedures set forth in the CBA, which meant that the charter amendment would not be applied to any current assistant police chief. Second, the ULP charge before SERB in this case was based solely on the city's application of the charter amendment to the promotional process. This is demonstrated by the fact that the union did not file its ULP charge until October 2002, one year after the charter amendment had been enacted. And that is because the union had to wait until the city had actually sought to apply the charter amendment to a bargaining-unit member before alleging that a ULP had occurred. (Although, in actuality, the city did not apply the charter amendment to the CBA that was in effect when the charter amendment was enacted—it was determined in a separate proceeding that there was no vacant assistant-police-chief position available until after the CBA at issue had expired.) Simply because there could have been a potential conflict between the charter amendment and the CBA had no bearing on the issue that was before SERB, which was whether the city had committed a ULP by applying the charter amendment and refusing to fill a vacant assistant-police-chief position by the Rule of One.

### VI. Duty to Bargain, Good Faith, and a Higher–Level Legislative Authority

{¶ 29} A public employer that intends to implement a decision that " 'affects' wages, hours, terms and conditions of employment" must bargain on that issue, "even if the question is reserved for managerial discretion." [7] Thus, although the CBA contained a management-rights provision that reserved for the city the right to "promote" employees except to the extent expressly limited by the CBA, SERB properly concluded that the city would ordinarily be required to bargain over the promotion process for assistant police chiefs.[8]

---

7. *Lorain,* supra, 40 Ohio St.3d at 261, 533 N.E.2d 264.

8. See *DeVennish v. Columbus* (1991), 57 Ohio St.3d 163, 566 N.E.2d 668 (holding that all matters affecting promotions are appropriate subjects of collective bargaining).

{¶ 30} The trial court agreed that the city had a duty to bargain with the union over the charter amendment's change to the promotion process, and it also agreed with SERB that *In re Toledo City School Bd. of Edn.*[9] was the controlling administrative precedent governing midterm bargaining. In *Toledo*, SERB held that "[a] party cannot modify an existing [CBA] without the negotiation and by agreement of both parties unless immediate action is required due to (1) exigent circumstances that were unseen at the time of negotiations or (2) legislative action taken by a higher-level legislative body after the agreement became effective that required a change to conform * * *."[10] SERB also held that "in future cases involving issues not covered in the provisions of a collective bargaining agreement, but which require mandatory midterm bargaining, SERB will apply the same two-part test."[11]

{¶ 31} Because the charter amendment was enacted by a majority of the city's voting public, SERB concluded that when "voters decide an issue at the ballot box, they are acting as a 'higher-level legislative authority'" to the city council under the second exception set forth in *Toledo*.

{¶ 32} This is the first time that SERB has sought to apply the second exception in *Toledo* to a specific set of facts. And in its application, SERB construed its term "higher-level legislative body" to encompass a "higher-level legislative authority." SERB based this determination on the fact that the term "higher-level legislative body or authority" was not defined in the Ohio Revised Code, but instead was an agency-created concept. SERB itself created the term. Thus, as SERB correctly noted, it could define the term as long as the definition was consistent with the objectives of R.C. Chapter 4117.[12] SERB then relied on the fact that the electorate of Cincinnati enacted the charter amendment, and not city council, in determining that the circumstances here fit the second exception set forth in *Toledo*. In so doing, SERB recognized that one of the objectives of R.C. Chapter 4117 is to promote good-faith bargaining.

{¶ 33} Thus, a city council cannot agree to a collective-bargaining agreement then pass an ordinance abrogating it. But that is not what happened here.

{¶ 34} SERB recognized that the city, through city council, did not act in bad faith in placing the charter amendment on the ballot. SERB specifically found

---

9. (Oct. 1, 2001), SERB No. 2001–005.

10. Id.

11. Id.

12. See *Springfield Twp. Bd. of Trustees v. State Emp. Relations Bd.* (1990), 70 Ohio App.3d 801, 806, 592 N.E.2d 871.

that the circumstances here were not comparable to "one party holding back an issue from bargaining and then springing it on the other party after the [CBA] ha[d] been ratified by both parties" and that "the record does not support a finding that the city was engaged in trickery or gamesmanship with the union." And there was substantial evidence to support these findings. The CBA had been effect for almost a year before city council voted to place the charter amendment on the ballot, and city council did not attempt to apply the charter amendment until the expiration of the CBA at issue here. Further, the charter amendment was drafted with input from a committee comprising citizens from the community that had been formed in response to tension between the community and the police department that had surfaced in April 2001.

{¶ 35} But the trial court reversed SERB's determination that the voting public was a "higher-level legislative authority," because it was inconsistent with the objectives of R.C. Chapter 4117. The trial court believed that concluding that the voting public was a "higher-level legislative authority" created a disincentive for public employers to bargain in good faith with their union employees. The trial court reached this conclusion by improperly relying on its own determination that the city had acted in bad faith by voting to place the charter amendment on the ballot. But the trial court should have deferred to SERB's resolution of the evidence before it and its finding that the city had not acted in bad faith, as there was substantial evidence to support that determination. (The dissent here makes the same error—it is for SERB to resolve the evidentiary issues before it, not a trial court acting in an appellate capacity—and certainly not an appellate court. We cannot change the facts.)

{¶ 36} The trial court also noted that the term "higher-level legislative body" should have been linked to the definition of "legislative body" found in R.C. 4117.10(B). But the definition of "legislative body" is specifically limited to that code section and did not apply here. We see nothing wrong with SERB's interpretation of a "higher-level legislative authority." Black's Law Dictionary defines "legislative" as "[o]f or relating to lawmaking or to the power to enact laws," and it defines "authority" as "[t]he right or permission to act legally on another's behalf." [13] Because the electorate of Cincinnati has the power to pass, and thus to enact, laws, and because city council is the representative body or agent, it was reasonable for SERB to conclude that the electorate of Cincinnati constituted a "higher-level legislative authority" as set forth in *Toledo*. (After all, the voting public could have just as easily voted against the charter amendment.)

{¶ 37} If the citizens of Cincinnati, in passing a charter amendment, are not a "higher-level legislative authority," then any charter amendment could never

---

**13.** Black's Law Dictionary (8th Ed.2004) 919 and 142.

affect future collective bargaining. On its face, that is impossible—both the city and any union could simply ignore the charter, which is the highest authority in city governance. Likewise, we assume, the citizens of Ohio could enact a constitutional amendment, but it could be ignored if it conflicted with a collective-bargaining agreement. To so state the issue shows its absurdity. The law must be obeyed. And we perceive no difference in whether the amendment was put on the ballot by council or whether an initiative put it on the ballot by gathering signatures—either way, the voters have the last word.

{¶ 38} For the trial court to reverse SERB's reasonable legal interpretation of what constituted a "higher-level legislative authority" for purposes of the second exception set forth in *Toledo*, and thus to hold that the city was not excused from its duty to bargain, was erroneous.

{¶ 39} As we noted earlier, in reviewing a SERB order, a trial court "must accord due deference to SERB's interpretation of R.C. Chapter 4117. Otherwise, there would be no purpose in creating a specialized administrative agency, such as SERB, to make determinations." [14]

{¶ 40} The trial court failed to defer and applied the wrong standard of review. Because SERB's legal interpretations of its own precedent were reasonable and because there was substantial evidence in the record to support SERB's findings, we hold that the trial court abused its discretion in reversing SERB's decision that the city had not committed a ULP in violation of R.C. 4117.11(A)(1) and (5). The trial court also erred in determining that Captain Gregoire was entitled to be promoted to assistant police chief.

{¶ 41} Accordingly, we sustain SERB's first assignment of error and the city's first and second assignments of error.

### VII. Second Probable–Cause Finding

{¶ 42} In SERB's second assignment of error, it asserts that the trial court erred in reversing SERB's decision to vacate its probable-cause finding involving the union's second ULP charge. Because the second ULP charge involved the same set of facts and issues, we sustain this assignment based on our reasoning set forth under SERB's first assignment of error.

### VIII. Motion to Intervene

{¶ 43} We decline to address the city's third assignment of error, which asserts that the trial court erred in denying its motion to intervene in the administrative appeal below, as any remedy we could afford the city is now moot given our

---

14. *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260, 533 N.E.2d 264.

decision to reverse the trial court's judgment and to reinstate SERB's order that the city had not committed a ULP.

{¶ 44} Based on the foregoing, we enter final judgment in favor of SERB and the city and thus reinstate SERB's order.

Judgment accordingly.

SUNDERMANN, J., concurs.

HILDEBRANDT, J., dissents.

HILDEBRANDT, J., dissenting.

{¶ 45} Because I believe that there was substantial evidence demonstrating that the city had acted in bad faith by placing the charter amendment on the ballot and because the city violated R.C. Chapter 4117 by refusing to bargain over the change to the terms and conditions of employment for assistant police chiefs, I dissent.

{¶ 46} Although the majority recognizes that one of the essential purposes of R.C. Chapter 4117 is to promote good-faith bargaining, it fails to uphold that purpose. There was substantial evidence in the record that the city had acted in bad faith. The mayor of the city and other city officials publicly acknowledged that the CBA would have to be renegotiated if the charter amendment passed. But instead of requesting that the union enter into midterm bargaining, the city chose to unilaterally implement the charter amendment, which changed the terms and conditions of employment for assistant police chiefs that the city had originally agreed upon. This did not demonstrate or support a finding of "good faith."

{¶ 47} Further, I agree with the trial court that the term "higher-level legislative body" contemplates a situation where a superior legislative or executive authority acts beyond the control of the public entity that is the party to the labor agreement in such a way that it frustrates the purpose of the labor agreement. It does not apply in a situation where, as here, the city, the public-entity party to the CBA, places legislation before the voters that unilaterally affects the terms and conditions of employment already agreed upon in the CBA. I find it relevant that but for city council placing the charter amendment on the ballot, the voters could not have approved the charter amendment. (The city council was essentially the public-entity party to the CBA here, as city council had the ultimate authority to approve all labor agreements that the city entered into.)

{¶ 48} Thus, the charter amendment was not the "will of the people," as the city argues, but instead was the will of the city. Unfortunately, SERB has set a

dangerous precedent by allowing the city to circumvent the rights of the union and to frustrate the purpose of Ohio's collective-bargaining law by allowing a public employer to agree to certain terms and conditions of employment with a union and then shortly thereafter pass legislation that conflicts with those terms. "Courts should not allow public employers to disregard the terms of their collective bargaining agreements whenever they find it convenient to do so. On the contrary, the courts will require public employers to honor their contractual obligations to their employees just as the courts require employees to honor their contractual obligations to their employers." [15]

---

15. *Mahoning Cty. Bd. of Mental Retardation & Developmental Disabilities v. Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St.3d 80, 84, 488 N.E.2d 872.