[Cite as *Elam v. Cuyahoga Cty. Dept. of Emp. & Family Servs.*, 2011-Ohio-3588.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95969**

## CAROLYN J. ELAM

PLAINTIFF-APPELLANT

vs.

## CUYAHOGA COUNTY DEPARTMENT OF EMPLOYMENT AND FAMILY SERVICES, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-715032

**BEFORE:** Celebrezze, J., Blackmon, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** July 21, 2011

**FOR APPELLANT**

Carolyn J. Elam, pro se
681 East 125th Street
Cleveland, Ohio 44108


**ATTORNEYS FOR APPELLEES**

William D. Mason
Cuyahoga County Prosecutor
BY: Francis X. Cook
Assistant Prosecuting Attorney
1641 Payne Avenue
Room 505
Cleveland, Ohio 44114


FRANK D. CELEBREZZE, JR., J.:

{¶ 1} Appellant, Carolyn Elam, appeals from a decision of the Cuyahoga County Common Pleas Court affirming the revocation of her Type B daycare provider certificate. Appellant, proceeding pro se, claims employees of the Cuyahoga County Department of Employment and Family Services ("EFS"), as well as the hearing officer at her administrative review hearing, acted in concert to vindictively terminate her certification. After a thorough review of the record and law, we reverse and remand.

{¶ 2} In 2001, appellant applied for and received certification as a Type B daycare provider. This allows an individual to provide publicly-funded daycare services for up to six children at one time. R.C. 5104.01(F) and (SS). From 2001 to 2009, appellant maintained her certification, passing biannual inspections with a somewhat spotty record. In October 2009, EFS employee Mae Houston attempted to call appellant

to set up an inspection of her home. She called the telephone number listed in EFS's computer database, but discovered that this number belonged to someone else. After numerous attempts to contact appellant by phone were unsuccessful, on October 30, 2009, Houston drove to appellant's home for an unannounced inspection. She got out of her vehicle and observed two dogs in the yard, one tied up and one running loose. She testified at the revocation hearing that the loose dog began to walk toward her and that she got back in her car and left without leaving her card or attempting to contact anyone inside. Houston then sent appellant a notice that EFS had decided to revoke her certificate on November 5, 2009. The notice provided that appellant failed to cooperate with EFS in the certification process by being unavailable for inspections, a violation of Ohio Administrative Code ("O.A.C.") 5101:2-14-06(4), and that she failed to maintain a working wired telephone line in violation of O.A.C. 5101:2-14-20(E).

{¶ 3} Appellant sought to appeal this determination, and an administrative review hearing was held before Administrative Appeals Officer Kathie Newton on December 8, 2009. At the hearing, Houston and Child Care Certification Supervisor Shareefah Thorton-Saleem presented their attempts to contact appellant using the incorrect phone number, and they stated that appellant had not given EFS an updated phone number. Appellant stated that she had changed her phone number several years before and that her former contact at EFS had no problems contacting her by phone. Houston and Thorton-Saleem also brought up appellant's spotty inspection history, which included a few repeated violations, her failure to bill for services in over a year, and the two dogs

Houston observed on the property. Appellant admitted that one of the dogs had damaged her telephone line trying to escape a fenced area of her yard.

{¶ 4} Hearing Officer Newton determined that appellant had failed to cooperate with inspections and that she did not have a working phone line. She affirmed EFS's decision to revoke appellant's certificate.

{¶ 5} Appellant then filed a complaint with the common pleas court against Houston, Newton, Thorton-Saleem, and EFS. The attorney representing EFS advised appellant that the proper recourse was an administrative appeal before the common pleas court rather than a civil complaint, and the action was converted accordingly.

{¶ 6} Appellant submitted to the court several documents demonstrating that EFS had her updated phone number as early as 2007. It appears that in 2009, her phone number was inexplicably reset in the computer system to her previous number. Appellant provided no fewer than seven documents demonstrating that EFS had her correct phone number in their files. After receiving these documents, EFS withdrew for consideration any reliance on the improper phone number, but insisted that the revocation was still proper. The trial court affirmed finding, "[t]his court finds that said decision is supported by substantial, reliable [and] probative evidence in accordance with the law."

{¶ 7} Appellant appealed to this court assigning 15 errors,[1] which can be grouped into three categories. The first category consists of errors that do not relate to the

---

[1] Appellant's assignments of error are lengthy and confusing; therefore, they are summarized within this opinion.

determination of the common pleas court. These errors include violations of appellant's due process rights during the administrative proceedings and sundry other alleged errors that occurred during the administrative hearing. These errors will not be addressed because they are outside the scope of this administrative review.

{¶ 8} The second category addresses the actions of the attorney representing EFS at a pretrial hearing before the common pleas court. Appellant claims this attorney inappropriately convinced her to change her complaint into an administrative appeal. Again, these claimed errors are beyond the scope of the limited appeal here and will not be addressed.

{¶ 9} The third category takes issue with the common pleas court's affirmation of the revocation of her daycare certificate. These errors will be addressed.

## Law and Analysis

### Revocation of a Type B Daycare Certificate

{¶ 10} "In reviewing an administrative appeal under R.C. Chapter 2506, a trial court considers the 'whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." *Manlou v. Cleveland Civ. Serv. Comm.*, Cuyahoga App. No. 83214, 2004-Ohio-1112, ¶6. Our review is more narrow in scope. See *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264; R.C. 2506.04. We must determine if the trial court

abused its discretion in its review of the agency's decision. Id. To constitute an abuse of discretion, the ruling must be unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.

{¶ 11} Pursuant to R.C. 5104.011(G), regulations governing the certification and review of Type B daycare providers were promulgated under O.A.C. 5101:2-14. Under R.C. 5104.011(G)(2)(g), the rules include "[p]rocedures for issuing, renewing, denying, refusing to renew, or revoking certificates." The Ohio Department of Job and Family Services promulgated O.A.C. 5101:2-14-40(A), which provides: "An applicant, certified professional type B or limited home provider, and professional or limited certified in-home aide shall be informed in writing of the right to request a county appeal review when questioning the actions of the county department of job and family services (CDJFS) [EFS in this case] with respect to their certification." O.A.C. 5101:2-14-6(E) further specifies that "[i]f the CDJFS denies the application or proposes to revoke a certificate due to [failure to cooperate with the CDJFS in the certification process], the CDJFS shall send written notification to the applicant or provider which contain the following information:

{¶ 12} "(1) The reason for denial or proposed revocation.

{¶ 13} "(2) The rule or statute violated, if applicable.

{¶ 14} "* * *

{¶ 15} "(5) Notice that reapplication for * * * professional certification cannot occur for * * * five years following the revocation of the certificate * * *."

{¶ 16} While appellant cites to R.C. 119 for support, the Ohio Supreme Court has recently reiterated that R.C. 119 applies only to state agencies and that the regulation and certification of Type B daycare facilities falls to county agencies throughout Ohio. *Crawford-Cole v. Lucas Cty. Dept. of Job & Family Servs.,* 121 Ohio St.3d 560, 2009-Ohio-1355, 906 N.E.2d 409, ¶12. Therefore, R.C. 119 et seq. are inapplicable to the present appeal.

{¶ 17} In compliance with O.A.C. 5101:2-14-6(E), EFS sent a notice of revocation. The notice appellant received on November 5, 2009 stated that her certificate was being revoked because: (1) she failed to cooperate with inspection, and (2) she failed to have a working phone line. There was no reliable, credible evidence that appellant failed to cooperate with the inspection and certification process. This reason was based on the perceived failure of appellant to update her phone number with EFS and its inability to contact her. EFS acknowledged that it had appellant's phone number listed in several places within its records. They withdrew this reason for consideration to support revocation before the common pleas court.

{¶ 18} In regard to the second listed reason, during the administrative review hearing, appellant stated that she no longer had the dogs in her yard because one tore down her phone line and electrical box trying to escape from a fenced-in area. EFS points to this testimony as some reliable, credible evidence justifying revocation. However, appellant produced a receipt from AT&T showing that the line was repaired on

November 14, 2009.[2]  This is evidence that appellant maintained the line and had it repaired in a reasonable manner after it was damaged.

{¶ 19} EFS argued before the common pleas court that "Ms. Houston was not able to complete the inspection as required by O.A.C. 5101:2-14-03 because she was not able to either contact [appellant], due to her not having a working phone, or get to her door, because of the presence of the loose dog."

{¶ 20} There is no evidence in the record that demonstrates appellant's phone was not working at the time Houston tried to schedule an inspection.  Houston never called the correct phone number, and at the hearing no one asked appellant when the dog damaged the phone line.  Given that appellant testified she got rid of the dogs after one tore up the phone line, and the dogs were still at appellant's home when Houston tried to perform an unannounced inspection, appellant's phone line was likely functional at that time and at the time she received the revocation notice.  No evidence exists in the record to support the conclusion that appellant failed to cooperate with EFS in the certification process.  The agency's inability to contact appellant by phone was of their own making.[3]

{¶ 21} The remainder of the evidence discussed at the hearing was not a valid basis for revocation.  Appellant's prior history of inspections and a few instances of

---

[2] Appellant stated in her brief and at oral arguments that the line was only inoperable for a few days, while EFS maintained the line was inoperable for longer.  There is nothing in the record indicating the length of time the line was inoperable.

[3] Houston was prevented from inspecting appellant's home because there was a loose dog on the premises, a dog appellant claimed was only a puppy.  However a decision to revoke made after only one attempt to contact appellant without something more is arbitrary and capricious.

noncompliance should not have served as the basis for revocation. She was found to be in compliance with all requirements on her two most recent inspections. If EFS wished to revoke her certificate for these reasons, it should have done so when she was found to be out of compliance and given her proper notice. Newton equated past instances of noncompliance with regulations found during inspections as instances of a failure to cooperate. Noncompliance is not the same as failing to cooperate with the inspection process.

{¶ 22} EFS also found that appellant had not billed the state for services in over a year. According to O.A.C. 5101:2-14-04(K), if a daycare provider does not provide services for six months or more, EFS could decide to not renew the provider's certificate.[4] However, as the hearing officer noted, appellant was not given notice of this violation, and it was not a basis on which the hearing officer affirmed revocation. Further, this provision does not provide a means to revoke a certificate, only that EFS may decline to renew the certificate. Therefore, it cannot serve as a basis for revocation before the common pleas court.

{¶ 23} EFS also argues that the keeping of a dog is grounds for termination. O.A.C. 5101:2-14-19(A)(14) specifies that "[a] pet or animal shall be permitted if it presents no apparent threat to the safety or health of the children." It goes on further to establish certain criteria for the care and management of the pet and notification to care

---

[4] This regulation specifically states, "[t]he CDJFS may choose not to renew a certificate for providers who have not provided publicly funded child care services to residents of Ohio for more than six months."

givers of children in the care of the provider.[5] It does not require notice to EFS. It does require the care giver to maintain records of inoculations, which appellant testified she had. Further, there is no evidence that the dogs were an apparent threat. No testimony or evidence established that they were vicious, hostile, or had attacked anyone. EFS failed to provide any evidence that appellant breached a regulation by keeping two dogs on the premises.

{¶ 24} We are left with appellant's own testimony that she failed to have a working land-based phone line at all times. No one at the administrative hearing questioned appellant about the length of time the phone line was inoperable, when the line was damaged, or whether it was repaired. Appellant later alleged that the line was repaired within a few days of being damaged and produced a receipt from AT&T showing when the line was repaired. This invoice establishes that appellant maintained a phone line in a reasonable manner. No evidence exists in the record to the contrary. It is reasonable for a service call for a utility company to take a few days.

{¶ 25} EFS's decision to revoke appellant's Type B daycare certificate was arbitrary and unsupported by the evidence in the record. The trial court erred in

---

[5] It states: "(a) All pets shall be properly housed, cared for, licensed and inoculated. All local ordinances governing the keeping of animals (exotic or domesticated) shall be followed. Verification of license and compliance with local requirements and inoculations, for each pet requiring such license or inoculations, or regulated by local government shall be on file at the provider's home for review by the * * * (CDJFS) representative. (b) Children shall not be directly exposed to animal urine or feces. (c) Caretakers shall be notified in writing as part of the JFS 01634 'Caretaker/Provider Agreement' * * *." A copy of this notification shall also be submitted to the CDJFS and maintained in the provider's file.

affirming the revocation of appellant's Type B daycare certification when no evidence in the record provided the basis for such an arbitrary action. Because this resolution disposes of appellant's remaining errors, they will not be addressed.

{¶ 26} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover of said appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

PATRICIA ANN BLACKMON, P.J., and
MARY J. BOYLE, J., CONCUR